341 So.2d 595 (1977)
Vivian S. CARTER, Plaintiff-Appellant,
v.
ROCKWOOD INSURANCE COMPANY and Sansone's Restaurant, Inc., Defendants-Appellants.
No. 13104.
Court of Appeal of Louisiana, Second Circuit.
January 10, 1977.
*596 Booth, Lockard, Jack, Pleasant & LeSage by Troy E. Bain, Shreveport, for plaintiff-appellant Vivian S. Carter.
Hal V. Lyons, Shreveport, for defendants-appellants Rockwood Ins. Co. and Sansone's Restaurant, Inc.
Before HALL, MARVIN and JONES, JJ.
HALL, Judge.
This suit was filed October 2, 1974, by plaintiff, Vivian S. Carter, against Sansone's Restuarant, Inc., and its insurer, Rockwood Insurance Company, seeking workmen's compensation benefits for disability arising out of a knee injury sustained by plaintiff when she slipped and fell while working as a waitress at Sansone's on July 6, 1973. On February 20, 1976, plaintiff filed a supplemental petition alleging that due to the weakened condition of her knee, she fell at home on February 25, 1975, and fractured the femur of her right leg above the knee. Plaintiff prayed for compensation benefits based on total and permanent disability from the date of the first accident, penalties and attorney's fees, medical expenses of $13,283.33 and costs. After trial the district court found plaintiff to be totally and permanently disabled and awarded compensation of $41.60 per week for 500 weeks, subject to a credit of $1,414.60 paid by the insurer. The district court also awarded medical expenses of $12,500, subject to a credit of $2,207.50 paid by the insurer. Plaintiff's claims for penalties, attorney's fees and medical expenses over $12,500 were rejected, with plaintiff's right to sue for the additional medical expenses being reserved. Plaintiff and defendants each appealed from the district court's judgment, which we affirm for reasons set forth in this opinion.
The fact that plaintiff is and has been totally and permanently disabled since the second accident is undisputed. The primary issue in this case is whether plaintiff's total and permanent disability after the subsequent off-the-job accident is causally related to the original on-the-job accident and injury to such an extent as to entitle plaintiff to workmen's compensation benefits from her employer for whom she was working at the time of the first accident. Secondary issues are whether plaintiff is entitled to penalties and attorney's fees, whether plaintiff is entitled to recover medical expenses in excess of $12,500, and whether defendants are entitled to credit for medical expenses paid in view of the fact that they did not plead payment as an affirmative defense.
In July, 1973, plaintiff was working as a waitress at Sansone's where she had been employed for several months. She worked six to eight hours a day, was continuously on her feet and spent as much as 85% to 90% of her time walking and carrying trays.
On July 6, 1973, plaintiff slipped in a puddle of water near the serving bar in the restaurant and fell, injuring her right knee. She was treated by Dr. Austin W. Gleason, Jr., a well-qualified orthopedic surgeon who was the only medical witness in the case. Dr. Gleason found that she had a fracture of the right kneecap and possible internal derangement such as torn ligaments and torn cartilages.
*597 Dr. Gleason treated plaintiff conservatively for several months, during which time she developed symptoms suggestive of traumatic synovitis which is an inflammation of the lining of the joint and chondromalacia which is softening of the cartilage which becomes frayed and degenerative. Dr. Gleason did not recommend surgery at that time and encouraged plaintiff to return to work if she could. Plaintiff tried to work for two days in November, but could not because of pain, swelling and her knee giving way. In December, plaintiff was still having significant symptoms and the doctor recommended surgery. An arthrotomy was performed which revealed that plaintiff had severe chondromalacia of the patella (degeneration of the cartilage under the kneecap) and a great deal of scarring about the kneecap. The diseased cartilage and scar tissue were shaved away from the kneecap. Some of the degenerative cartilage and scar tissue was related to the accident at Sansone's and some was related to a previous injury and surgery to the right knee which plaintiff sustained several years earlier and from which, except for a slight limp, she was asymptomatic at the time of the Sansone's accident.
After the operation Dr. Gleason treated plaintiff until March 14, 1974. On that date the doctor told plaintiff she could return to work when she "felt that her knee was strong enough" and the doctor thought it would be "good for her psychologically to return to her occupation." The doctor also noted at that time that she had limitation of motion in her knee joint, persistent pain and giving way, and there was the possibility that she may lose her kneecap. The doctor discharged her with a 15% loss of physical function to her right leg.
Plaintiff returned to see Dr. Gleason on May 3, 1974 and July 2, 1974, still having significant trouble. She was unable to return to work because her knee continued to give her trouble and would give way, was swelling, was painful, and she had a tendency to fall. Plaintiff testified she was scared to try to work because she knew she could not work for six to eight hours a day and knew she would have trouble carrying a tray. She did not return to see Dr. Gleason after July, 1974, because he had nothing further to offer her in the way of treatment except surgery for removal of the kneecap, which he did not recommend at that time.
On February 25, 1975, plaintiff fell in the carport of her home and fractured her femur above her right knee. Her foot slipped, probably on a spot of oil, and when she tried to catch herself by locking her right knee it gave way and she fell. She suffered a severely comminuted fracture which the doctor described as "a bunch of pieces" and "like an eggshell." The doctor testified there was apparently quite a bit of force involved and that he had never seen a fracture like this except in high velocity accidents, such as a motorcycle accident.
Dr. Gleason testified that the severity of the fracture was due to osteoporosis of the bone which is a weakening of the bone due to lack of normal use, attributable to her knee injury. Dr. Gleason was further of the opinion that the weakened condition of plaintiff's knee and the fact she could not lock her knee contributed to her fall and to the severity of the fall.
Plaintiff was hospitalized from February 25, 1975 to April 26, 1975. She was hospitalized again in September of 1975, for a bone graft and insertion of a plate at the fracture site.
Dr. Gleason last saw plaintiff on April 30, 1976. She was still on crutches when outside her home. Her range of motion for her right knee was limited. She will have to have future surgery for removal of the metal plate. She has a 40% disability of her right leg and Dr. Gleason does not foresee that she will ever be able to go back to a job where she has to stand on her feet for several hours a day. She may have to have her knee joint completely replaced. Plaintiff's disability attributable specifically to the knee was significantly worsened by reason of lack of use during the period of treatment for the fractured femur.
Defendants paid plaintiff weekly compensation benefits to March 14, 1974, the *598 date on which Dr. Gleason reported plaintiff was able to go back to work. Defendants also paid medical expenses incurred up to that time.
The trial court found that plaintiff was still disabled from the first injury at the time of the February, 1975 accident and further found that the second accident was caused by or contributed to by the first accident and, therefore, was compensable. Defendants assign as error the award to plaintiff of any benefits following her release by the physician on March 14, 1974, contending she was fully capable of returning to work after that date and that the injury resulting from the second accident at home is not compensable as it did not arise out of the course and scope of her employment.
There is ample evidence to support the trial court's finding that plaintiff was still disabled at the time of her fall in February, 1975. Although Dr. Gleason discharged her as able to go back to work in March, 1974, his opinion in that respect was qualified by his statement that she should return to work when she felt her knee was strong enough and by his belief that it would be psychologically good for her to return to work. Plaintiff returned to the doctor for further treatment on two occasions after her discharge and at the time of her discharge the doctor acknowledged that she had a 15% disability of the leg, that she had persistent pain and that the knee was subject to giving way. Plaintiff testified she continued to have pain, swelling and could not do the work of a waitress. The preponderance of the evidence is that plaintiff was disabled within the meaning of the Workmen's Compensation Law at the time of the February accident.
The evidence is likewise ample to sustain the trial court's finding that the on-the-job injury was a contributing cause of the subsequent at-home accident which resulted in additional injury as well as aggravation of the previous injury and prolongation of the disability related to the previous on-the-job injury. Plaintiff testified that when her foot slipped, she tried to lock her knee but could not, and it gave way, causing her to fall or at least causing her to fall harder than she otherwise would have done. Dr. Gleason made it clear that the first injury to plaintiff's knee resulted in an inability to lock the knee and a tendency for the knee to give way and the doctor was of the opinion these factors were a contributing cause of the fall, the severity of the fall, and the severity of the injury resulting from the fall.
The Workmen's Compensation Law provides for benefits during the period of disability resulting from an on-the-job accidental injury. Post-accident complications, whether of purely a medical nature, or whether relating to subsequent off-the-job accidental injury, may be compensable if they are causally related to an on-the-job accident. See Malone, Louisiana Workmen's Compensation Law and Practice, § 233. Also see Larson, Workmen's Compensation Law, § 13.11 and § 13.12. Compare Owens v. Liberty Mutual Insurance Company, 307 So.2d 313 (La.1975).
In this case the second accident was a natural and expectable consequence of the work-related accident and the disability resulting from the combination of the two accidents is compensable. Causation of the second accident and resulting disability by the previous on-the-job accident is clearly established. The work-related injury prevented plaintiff from catching herself and thereby was a contributing cause of the fall itself. The work-related injury caused plaintiff to fall with greater force than she otherwise would have, contributing to the severity of the fall. The work-related injury had caused osteoporosis of the leg bone and thereby contributed to the severity of the second injury. The work-related injury was aggravated by the second accident.
The nature of the original knee injury was such that the chance of subsequent reinjury was a foreseeable risk and an expectable consequence. The second accident resulted during normal activity and was a reasonably foreseeable and natural consequence of the work-related injury.
*599 We perceive of no reason for distinguishing this case which involves a subsequent off-the-job accident from those cases allowing recovery of compensation benefits for post-accident medical complications and those cases allowing recovery against an initial employer where there was a subsequent on-the-job accident while working for another employer. See Deville v. Townsend Brothers Construction Company, 284 So.2d 110 (La.App. 3d Cir. 1973); Lachney v. Employers Commercial Union Insurance Companies, 337 So.2d 624 (La.App. 4th Cir. 1976); Estilette v. United States Fidelity & Guaranty Co., 64 So.2d 878 (La.App. 1st Cir. 1953); Kridler v. Bituminous Casualty Corporation, 409 F.2d 88 (5th Cir. 1969).
Plaintiff is and has been continuously disabled as a result of the on-the-job accident of July, 1973. The judgment of the district court awarding her total and permanent disability benefits from that date for a period of 500 weeks is correct.
The judgment of the district court rejecting plaintiff's demands for penalties and attorney's fees is likewise correct. Although the district court and this court have found that plaintiff continued to be disabled after her discharge by the doctor in March, 1974, defendants acted with reasonable justification in terminating compensation benefits at that time based on the doctor's report that plaintiff was able to go back to work. The factual and legal issues relating to the effect of the second accident were serious and unsettled and reasonably justified defendants in not resuming payments until their liability was judicially established. Defendants' failure to pay benefits was not arbitrary, unreasonable or capricious and penalties and attorney's fees are not due.
The judgment of the district court allowing defendants credit for medical expenses previously paid by defendants is correct. Technically, payment is an affirmative defense which must be pleaded. LSA-C.C.P. Art. 1005. When plaintiff objected to defendants' evidence as to payment of medical bills, the trial court could have allowed defendants to amend their pleadings, then allowed plaintiff a continuance if prejudice resulted, and then allowed the evidence. LSA-C.C.P. Art. 1154. There is no suggestion that plaintiff was surprised or prejudiced in any way by defendants' evidence of payment. If there was error in admitting the evidence the error was harmless. See Motor Machine & Supply Co. v. Delilah Towing Co., Inc., 321 So.2d 896 (La. App. 1st Cir. 1975). Plaintiff is not entitled to recover for medical expenses already paid by defendants.
Plaintiff prayed for medical expenses incurred in the amount of $13,283.33 and future medical expenses to be incurred. At the times pertinent to this litigation LSA-R.S. 23:1203, which was subsequently amended, provided:
"The employer shall in every case coming under this Chapter, furnish all necessary medical, surgical, hospital services and medicines or any non-medical treatment recognized by the laws of this state as legal, not to exceed the total sum of twelve thousand five hundred dollars ($12,500.00), except in cases of undue and unusual hardship as hereinafter provided, unless the employee refuses to allow them to be furnished by the employer.
* * * * * *
"Upon a showing by the injured employee in a court of competent jurisdiction by a preponderance of the evidence that as a result of the injury he necessarily requires medical, surgical or hospital services or medicine to a sum in excess of twelve thousand five hundred dollars ($12,500.00) and that unless same are furnished by the employer he will be subjected to undue and unusual hardship, the court in its discretion may order the employer to furnish same, not to exceed the additional sum of twelve thousand five hundred dollars ($12,500.00)."
No evidence was offered by either plaintiff or defendants as to whether plaintiff would or would not be subject to undue and unusual hardship by reason of medical expenses incurred in excess of $12,500. The trial court limited plaintiff's recovery in *600 this case to $12,500, subject to credit for medical expenses previously paid, without prejudice to plaintiff's right to sue for any medical expenses already incurred or to be incurred in the future, in excess of $12,500.
In Campbell v. Fidelity & Casualty Company of New York, 339 So.2d 339 (La.1976), decided after the trial court's judgment in the instant case, the Supreme Court considered the issue of excess medical expenses under LSA-R.S. 23:1203. The court held that the relevant inquiry under the statute is whether the payment of medical expenses exceeding $12,500 as they accrue by the injured employee, rather than by his employer, would amount to an undue and unusual hardship. If so, then excess medical benefits may be awarded. The court concluded that the assessment of a hardship is more than a matter of mathematics and involves a consideration of the employee's total circumstances at the time the need for the medical expenses arises. After reviewing the evidence of the injured workman's source of income and inability to work, the court concluded he was subjected to an undue and unusual hardship and was entitled to reimbursement for excess medical expenses.
Evidence as to the plaintiff's total financial circumstances and evidence as to whether payment of the additional medical expenses would amount to undue and unusual hardship is lacking in the record before us. The trial court correctly limited plaintiff's recovery to $12,500 and appropriately reserved plaintiff the right to pursue recovery of past and future medical expenses in excess of $12,500 in another proceeding.
For the reasons assigned, the judgment of the district court is affirmed at the cost of defendants-appellants.
Affirmed.