KLIEBERT, Judge.
Clarence Kelly, plaintiff (hereinafter “Kelly”) was a dump truck driver for Violet Packing Company (hereinafter “Violet Packing”).
On two separate occasions during March, 1977, Kelly experienced falls while in the course and scope of his employment. The falls, approximately one week apart, occurred while Kelly was getting out of his dump truck. The first fall involved falling onto a pile of shells and the second fall involved falling backwards onto the truck’s running board. On October 18, 1977, Kelly underwent surgery. A laminectomy was performed at the L5-S1 level. Additionally, due to complaints and vague symptoms, the L4-L5 area was explored and the disc examined.
In June, 1978, Kelly was involved in a minor automobile accident where the front fender of his automobile was struck by another driver. Despite continuing their workmen’s compensation payments, Violet Packing and their insurer, United States Fidelity and Guaranty Company (hereinafter “USF&G”), defendants, discontinued medical benefits claiming Kelly’s continuing pain and the necessity for additional surgery, were caused by the automobile accident of June 1978. Kelly sought and obtained a hearing to have the trial court order defendants to provide medical benefits under the workmen’s compensation statute. After a hearing, the court declined to order defendants to guarantee medical payments and dismissed the rule. Kelly appeals.
The issue on appeal is whether plaintiff has proven his present medical condition was caused wholly or in part by his job-related accidents rather than exclusively by the subsequent automobile accident. The only evidence introduced was Kelly’s testimony and that of his treating physician, Dr. Watermeier.
Kelly testified to being in an automobile accident in June, 1978. He related how another automobile had run a red light and had struck his automobile in the front fender, but he says he was not injured in this accident. Kelly denied having any other injuries or accidents since March, 1977, and stated that Dr. Watermeier had been telling him for over a year that he needed another operation. Kelly stated that even though Dr. Watermeier operated on his back in September, 1977, he has had constant back pain, and has been on constant medication since that time and has become addicted to pain medication.
On cross examination, Kelly admitted that after the operation and before the automobile accident he had told Dr. Water-meier he was feeling a little better and didn’t have pain on occasions. He testified that every time he visited the doctor he had told him he was in pain. Kelly further stated that pain was just as bad before the automobile accident as after the accident. Regarding the automobile accident, Kelly stated the car which had struck him was travelling approximately 25 to 30 miles per *544 hour when it hit the front fender on the driver’s side and that his vehicle was travel-ling approximately 30 miles per hour at the time of the impact.
The deposition of Dr. John Watermeier was introduced into evidence in lieu of his testifying at the hearing. Dr. Watermeier, the treating physician, testified to his treating Kelly since August, 1977. In October, 1977, Dr. Watermeier operated on Kelly for a lumbar laminectomy and related that Kelly had done well for three to four months after surgery. Thereafter, Kelly started having more pain, particularly left leg pain. His doctor testified he treated him “with all kinds of things, medications, electrical nerve stimulator, gave him an epidural anesthetic block in his back,” all prior to the auto accident. After the automobile accident, Kelly informed Dr. Watermeier his back and leg were hurting him even more.
A myelogram performed in May, 1979 showed no evidence of any new injuries, while a myelogram performed in December, 1979 indicated a ruptured disc at the L4-L5 level. Dr. Watermeier felt Kelly needed another myelogram to determine if Kelly had a new ruptured disc or had aggravated his old disc problem, or if he needed a spinal fusion as a result of the initial operation. Dr. Watermeier further stated Kelly could have these symptoms and still need a spinal fusion without any intervening injury or trauma.
Dr. Watermeier testified to Kelly being on “heavy medication” since the onset of treatment in August, 1977, and it was his present diagnosis that Kelly had a ruptured disc at the L4-L5 level and, given the previous surgery at the L5-S1 level, he believed Kelly needed a spinal fusion from the fourth lumbar level to the sacrum region. Since all of Kelly’s symptoms had been “pretty specific” and had not changed, Dr. Watermeier felt all were due to the job-related injury of 1977.
On cross-examination, Dr. Watermeier admitted examining the disc at the L4-L5 region during the first surgery and from this examination concluded it appeared normal and did not require removal. Dr. Wat-ermeier further admitted that, even though Kelly reported back and leg pain in his post-operative (but pre-accident) visits, such visits are consistent with a patient’s normal post-operative course. During the visit of June 30, 1978, Dr. Watermeier noted Kelly had “aggravated his back” and prescribed heavier medication. It was further established that, in Kelly’s visits with Dr. Water-meier for two months prior to the automobile accident, Dr. Watermeier made no notations of muscle spasms. However, muscle spasms were noted in visits subsequent to the automobile accident. In conclusion, Dr. Watermeier stated he ascribed eighty percent of Kelly’s present problems to his work-related injury and twenty percent to the automobile accident of June, 1978.
In essence, it was Dr. Watermeier’s opinion that Kelly had a disc injury at L4-L5 prior to the automobile accident. The shaking up and twisting of Kelly’s body aggravated the injury and caused it to come to light.
Dr. Watermeier’s testimony was clearly uncontradicted. In his professional opinion, it was more probable than not the initial injury of March, 1977 was the cause if Kelly’s present medical problems. The defendant submitted no testimony. Instead, it relied on argument of counsel to contradict Dr. Watermeier’s opinion.
The trial judge denied the plaintiff’s request, but gave no written reasons for the denial. We believe he erred.
Hall v. Great Atlantic and Pacific Tea Company, Inc., 297 So.2d 527 (4th Cir. 1974), writ refused 300 So.2d 842, at page 530, states the burden of proof required in a workmen’s compensation case as follows:
“The plaintiff in a workmen’s compensation case has the burden of proving every element of his action, including causation of the claimed disability, by a preponderance of the evidence. Proof is sufficient to constitute a preponderance when the evidence, taken as a whole, shows that the fact or causation sought to be proved is more probable than not.” (Citations Omitted)
*545 In our opinion the evidence adduced below preponderates strongly in favor of the conclusion that the initial injury of March, 1977 was more probable than not the cause of Kelly’s present medical problems.
The uncontradicted testimony of Dr. Watermeier was that Kelly’s symptoms have not changed since 1977, that Kelly has never reached a point where he could return to work since March, 1977, that Kelly had pain after the initial operation of September, 1977 and for months before the accident of June, 1978, and that it was his professional opinion that the present injury was there prior to the automobile accident and the aggravation caused by the automobile accident caused it to come to light. The defendant sought to contradict this.
Appellees argue that Kelly’s subsequent automobile accident was the sole cause of the subsequently discovered L4-L5 disc rupture. However, Dr. Watermeier’s un-contradicted testimony was that Kelly’s problem at the L4-L5 level was eighty per cent work related and twenty per cent to the automobile accident of June, 1978. Therefore, the best that can be said about the accident of June, 1978 is that it aggravated the prior injury.
Aggravation of a claimant’s condition suffered in a subsequent accident is not, in itself, a reason to deny him compensation benefits to which he is otherwise entitled. Deville v. Townsend Bros. Construction Company, 284 So.2d 110 (3rd Cir. 1973), writ denied 286 So.2d 367. To deny compensation benefits, the employer must show by a preponderance of the evidence that it was more probable than not that the subsequent accident was the cause in fact of the present injury.
Since defendant-appellee has adduced no evidence to meet this burden and since plaintiff had adduced testimony which causally connects plaintiff’s present physical condition to the injury of March, 1977, then the subsequent aggravating accident does not preclude Kelly from full compensation benefits, including the necessary medical treatment sought herein.
The demand for penalties and attorney’s fees is rejected since weekly compensation benefits have been paid to Kelly since the occurrence of disability.
Accordingly, the judgment of the trial court is reversed and it is now ordered that there be judgment in favor of plaintiff and against defendant for necessary medical expenses and court costs.
REVERSED AND RENDERED.