BOUTALL, Judge.
This is a workman’s compensation case. From a judgment finding the claimant totally and permanently disabled, the defendant employer has appealed and the plaintiff has filed a cross appeal.
The claimant is Doretha Gilmore, a thirty-year old woman who was injured in a fall while working as a housekeeper at Ochsner Hospital on August 4, 1982. While cleaning some tile above a tub-shower, she slipped and fell into the tub. She went to the Ochsner emergency room, complaining of pain in the head, right shoulder, and right hip. Shortly afterward she began having severe pains in her back. She was referred to a staff orthopedist who pronounced her able to return to work on August 31, 1982. She felt she was in too much pain to work and sought legal help in obtaining worker’s compensation benefits. She did attempt to return to the job in November, 1982 but reported to the Ochs-ner emergency room with back pain. Early on New Year’s morning, 1983, she was injured in a second accident, when an automobile she was driving was hit by another. From August 4, 1982 to the date of trial she continued to receive medical treatment from physicians to whom her several successive attorneys referred her.
Trial was held on June 27, 1983, but was continued as an open case to allow further testimony or depositions of witnesses who were unable to appear at trial. No testimony or depositions were filed into the record after trial. Judgment in favor of the plaintiff was rendered on September 27, 1983, finding Doretha Gilmore to be totally and permanently disabled as a result of the job-related accident. The court denied penalties for arbitrary or capricious termination of benefits. The employer appealed the judgment, and the employee cross-appealed that portion of the judgment denying penalties and attorney’s fees.
The defendant raises two issues: first, whether the on-the-job accident caused a permanent and total disability; and second, whether worker’s compensation benefits should have been granted for disability resulting from the later automobile accident or, in the alternative, whether the court should have distinguished damages incurred as a result of the accident at the hospital from those incurred in the automobile accident. The plaintiff raises a third issue, whether Ochsner terminated her compensation benefits in an arbitrary and capricious manner.
Total and permanent disability. Although the procedural rules in worker’s compensation cases are construed liberally in favor of the claimant, he bears the burden of proving:
.“... by a preponderance of the evidence: that he received personal injury by accident arising out of and in the course of his employment; that he is disabled; and, that his disability resulted from injuries sustained in the work-related accident. See Laughlin v. City of Crowley, 411 So.2d 708 (La.App. 3 Cir.1982), and authorities cited therein.” Stanfield v. Insurance Company of North America, 420 So.2d 1296 (La.App. 3rd Cir.1982), writ denied, 423 So.2d 1180 (La.1982), at 1297.
The trial judge stated in his reasons for judgment that he believed that Ms. Gilmore’s injuries were caused by the original accident at work rather than by the automobile accident. He based his judgment on the reports of physicians treating her before December 31, 1982 and her continuing complaints of pain. At trial testimony was given by one physician only, Dr. Luis Bo-gran, who had first examined her on March 24, 1983 and was still her physician at time of trial.
The determination of whether Ms. Gilmore was in fact disabled by the work-related accident is complicated by the occurrence of the second accident and by her changing physicians at that time. There *200 fore, we have examined very closely the reports of the physicians who saw her before December 31, 1982 but were not called as witnesses.
It is important to note that Ms. Gilmore stated in a January 9,1981 personal history at Ochsner Medical Center that she had not had any back trouble. Dr. Duncan, the Ochsner orthopedist who saw her on August 24, 1982, reported that the x-rays were negative, but that she reported severe pain. His opinion is as follows:
“I do not find any present significant orthopaedic problem. The patient has subjective complaints without significant objective findings.
“The patient is exaggerating her complaints.
“In my opinion, the patient should return to work.”
The report of Dr. Arthur Z. Blamphin dated December 20, 1982, reveals the following: When he first examined Ms. Gilmore on August 31, 1982, she complained of pain in the back of the head, the right shoulder, and low back. He found: limitation of motion and tenderness upon palpation of the neck; normal motion of the shoulder but tenderness of the right upper deltoid muscle; and as to the back tenderness of the lumbosacral joint, positive straight leg raise test at 70 degrees, and pain upon bending forward, which she could perform to the lower one-third of her leg. After treating her with pain pills and physical therapy treatments, Dr. Blamphin informed her attorney that she should be referred for an orthopedic consultation as she was still complaining of pain. In her last visit on September 29, 1982, she complained of a stiff neck, stiff right shoulder, headaches, and painful and stiff back. Dr. Blamphin’s summary reads as follows:
“Impression: 1. Contusion injury to head with post traumatic cephalalgia.
2. Cervical strain.
3. Lumbosacral strain.
Prognosis: Good
Impairment: No permanent impairment expected.
Disability: Undetermined.”
Dr. Charles R. Billings, the orthopedist to whom the attorney sent Ms. Gilmore, reported that his examination on September 24, 1982 was limited to the lumbar spine and both lower extremities. His summary is as follows:
“Lateral and A-P radiographs of the lumbar spine were obtained at her initial office visit that disclosed no significant disc space narrowing. There was minimal evidence of degenerative joint disease.
“The initial impression was that of lumbar strain with possible lumbar disc disease. Conservative management was advised and Meclamen was prescribed as a nonsteroidal anti-inflammatory agent. Proper body mechanics were also discussed concerning the lumbar spine region. Lifting and bending should be restricted activities.”
She was told to return in one month for reassessment but apparently did not.
Ms. Gilmore’s second attorney referred her to Dr. Joseph Rauchwerk, an orthopedic surgeon, who saw her first in October, 1982 for evaluation of her right shoulder and lower back. Dr. Rauchwerk reported that straight leg raising was negative both in sitting and in the supine position. His summary of the first visit is as follows:
“IMPRESSION AND OPINION: The subjective complaints and physical examination are consistent with grade I my-ofascial sprain of the lumbosacral spine superimposed on preexisting early degenerative changes of the L5-S1 facet joint on the left side. Mild contusion of the right shoulder.
The treatment plan will consist of back conditioning exercises and a rehabilitation program for low back and the right shoulder.
Please note that the estimated length of disability should not exceed six to eight weeks from the time of the initial examination (10/4/82).”
Ms. Gilmore was treated by the physical therapy department at Touro Infirmary *201 five times between October 26 and November 3.
On November 15, Dr. Rauchwerk informed the compensation insurer that she could return to work. An Oehsner emergency room report and an “employee work-related accident report” indicate she did return to work the next day, November 16, 1982, but reported to the emergency room complaining of pain in the shoulders, upper right arm, and low back. The physician’s impression as stated on the accident report was, “Low back pain (R) shoulder following injury; continue pain med.” She was instructed to go home for one day and then see Dr. Goodman in physical medicine. She apparently did not follow through on the referral to Dr. Goodman but returned to Dr. Rauchwerk, who saw her twice more, on November 22 and December 6, 1982. She complained of recurrent swelling of the shoulder joint, which Dr. Rauchwerk thought might be a “nonspecific arthritic condition.”
It is possible for a severe back problem to manifest itself only in a patient’s subjective complaints of pain. The Supreme Court in Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982) held that a causal connection existed between a work-related accident and a ruptured disc that was discovered and surgically corrected two years later. The employee had had no previous back trouble but was in continuous pain from the time of the accident. Tests and examinations over the two year period were reported as normal, but the last surgeon consulted disagreed with interpretations of previous physicians and performed the operation. See also a case with similar findings and a similar holding by the appellate court, Bridgewater v. Crown Zellerbach, 449 So.2d 515 (La.App. 1st Cir.1984). In both the Martin and the Bridgewater cases the plaintiff’s proof was eased by the fact that surgery was eventually performed, confirming the disability. In both cases the physicians acknowledged that testing is not 100 percent accurate and that interpretations can be wrong.
The trial judge found that Ms. Gilmore suffered pain from the work-related accident that was severe enough to constitute total disability. The trier of fact must make the factual assessment of the extent of the plaintiff’s pain. His determination will not be distrubed on appeal where the evidence furnishes a reasonable basis for his finding, unless it is clearly wrong. Ellis v. Rapides Parish School Bd., 419 So.2d 990 (La.App. 3rd Cir.1982) and cases cited therein. The evidence in the case before us does support Ms. Gilmore’s being in pain, even though the physicians were not able to find an objective basis for the amount of pain reported.
Second Accident Away From Work. The general rule regarding aggravation of a work-related injury by a subsequent trauma is summarized in Stewart v. Hospitals Affiliates Intern., Inc., 394 So.2d 647 (La.App. 1st Cir.1980), affirmed, 404 So.2d 944 (La.1981), at 650:
“An injury which is work related that is aggravated by an off the work accident is compensable only if there is a causal relation between the off the job accident and the work related injury. Bolden v. Georgia Cas. & Sur. Co., 363 So.2d 419 (La.1978) and Carter v. Rockwood Ins. Co., 341 So.2d 595 (La.App. 2nd Cir.1977).”
The existence or not of a causal relationship between the two traumas is a difficult distinction to make. Malone and Johnson, in “Workers Compensation,” Louisiana Civil Law Treatise, Vol. 13 (2nd Ed.1980) Section 236, point out that often where compensation has been allowed, the second injury is in some way a foreseeable or natural consequence of the earlier work-related disability. The determination was relatively easy in Carter v. Rockwood Ins. Co., 341 So.2d 595 (La.App. 2nd Cir.1977), in which a waitress injured her knee on the job, then broke the same leg several months later, owing to the weakness of the leg from the first injury. The same reasoning was followed by the court in Kelly v. City of New Orleans, 414 So.2d 770, (La.1982). The decision to order corrective *202 surgery for a policeman’s reinjured shoulder turned on the physician’s opinion that there was a 75% chance that a work-related shoulder injury would recur. In Simon v. Commercial Union Assur. Co., 389 So.2d 1367 (La.App. 3rd Cir.1980), a woman suffered a lumbar strain with nerve root injury in a fall at work and her back condition was worsened two months later, when her child came up behind her and made her jump. The court, without discussion of the issue of causal connection, ordered payment of compensation extended to the recuperative period of the second trauma.
Judgments of the courts have varied where the second trauma results from the negligence of a third party, frequently in an automobile accident. In Kelly v. Violet Packing Co., 405 So.2d 542 (La.App. 4th Cir.1981), writ denied, 409 So.2d 670 (La. 1981), the plaintiff suffered a work-related injury requiring back surgery and was later hurt in an automobile accident. He was unable to return to work because of continuing back and leg pain. In allowing full compensation, the court accepted the treating physician’s opinion that the shaking up of the second accident aggravated and brought to light a disc injury that was caused by the first accident.
In Allstate Ins. Co. v. Theriot, 362 So.2d 1214 (La.App. 4th Cir.1978), reversed on other grounds, 376 So.2d 950 (La.1979) the court considered new injuries to a previously injured neck in a later automobile accident to be unrelated to the on the job accident. As authority for its position the court cites Malone’s “Workmen’s Compensation,” Louisiana Civil Law Treatise, Volume 13 (1951), Section 233, to the effect that, despite the courts’ liberal attitude toward complications of a work-related injury resulting from an independent cause, the employer:
“ ‘. should not be charged for independent harms which the employee sustains while under treatment where such harms not related in fact to the accident which occurred on the job ....’”
Malone, supra, in Allstate Ins. Co. v. Theriot, supra, at 1217.
Returning to the case before us, the following facts are important in considering the effects of Ms. Gilmore’s automobile accident. Ms. Gilmore consulted a new attorney who referred her to a new physician. Dr. D.L. Kewalramani saw her on January 4, 1983 and reported the following findings: 1) myofascial cervical region pain syndrome; 2) soft tissue injury to the right shoulder producing mild bicipital tendonitis; 3) chronic myofascial lumbar region pain syndrome; 4) severe depression, “probably related to the previous injury, pain and altered sexual activity and also this trauma has aggravated the depression.” Dr. Kew-alramani saw her again on January 18, January 21, and February 9. On those visits the physician found Ms. Gilmore clinically improved but complaining of worse pain. Dr. Kewalramani attributed the pain to depression and on March 9 discharged her when she asked for a renewal of an analgesic prescribed by another physician.
Ms. Gilmore hired her present counsel and was referred to Drs. Raul Reyes and Dr. Luis Bogran, her current physicians, shortly after her last visit to Dr. Kewalra-mani. Her first examination was made by Dr. Reyes, and subsequent treatment, including a period of hospitalization in April, 1983 was by Dr. Bogran. Her complaints were of headaches, pain in the right shoulder and low back, and a stiff neck.
Dr. Bogran testified that he felt in all likelihood Ms. Gilmore did not have a ruptured lumbar disc, as she had been given a CAT scan and electromyogram which were reported as normal. Following a ten day stay at Touro she felt much better in early May; however, shortly thereafter she regressed and showed little or no improvement thereafter. Dr. Bogran was unable to determine the effects of the second accident. Dr. Bogran stated that as to the back:
“Well, once you have an injury to an area, it is difficult to say how much a second injury has contributed to the symptoms at any one point and how much the second incident or accident contributed to the length of recovery.”
*203 He testified that he reviewed the reports of other physicians regarding the August 1982 accident and found:
“Well, she definitely had an injury that affected her back. The history that she gave me was because of the fall that she — where she injured herself in August of ’80 [’82]. I believe it was August of ’80 [82]. It was a pretty nasty fall. I would expect her to have pain for two or three months, gradually decreasing her range of motion, gradually improving. Now, I absolutely cannot tell you how much the second accident prolonged her recovery, if at all.”
Dr. Bogran felt she was unable at time of trial to return to her job in the housekeeping department.
When the court asked Dr. Bogran to estimate the length of time from trial to full recovery, the physician stated:
“At the rate that she has improved, which has been kind of slow, I would estimate three to five weeks or about a month. I think that most healthy people like her would have recovered in a couple of months, two or three months from this type of injury.”
We find that the trial judge was correct in his determination that the second accident was not the cause of the symptoms complained of at the time of trial. The localities of Ms. Gilmore’s pain remained the same, although her legs were also hurt in the automobile accident. As held in Kelly v. Violet Packing Co., supra, we hold that a second non-work-related injury which aggravated the work-related injury does not preclude the plaintiff from receiving full benefits.
We pretermit the question of whether the odd lot doctrine applies to this case, because the defendant has the right to petition for a modification of the decree of permanent total disability and have the plaintiff reexamined from time to time during the period of compensation. LSA R.S. 23:1121.
Penalties and Attorneys’ fees. Ochsner terminated Ms. Gilmore’s benefits as of March 15, 1983, upon receiving a report from Dr. Kewalramani, suggesting her complaints were not consistent with medical findings. The trial judge stated, in his reasons for judgment that Ochsner was not, arbitrary or capricious in terminating the benefits in March, 1983, because there was at that time a genuine dispute as to which accident caused her disability. This determination is supported by the record.
Accordingly, for the reasons discussed above, the judgment appealed from is affirmed.
AFFIRMED.