880 So.2d 208 (2004)
Donna Sue ROYALS, Plaintiff-Appellee
v.
TOWN OF RICHWOOD, Defendant-Appellant.
No. 38,738-WCA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 2004.
*209 Samuel T. Singer, Winnsboro, Dawn Hendrix, Rayville, for Appellant.
Curtis Daniel Street, for Appellee.
Before BROWN, CARAWAY, and MOORE, JJ.
BROWN, C.J.
Donna Royals, an officer with the Richwood Police Department, was awarded workers' compensation benefits, attorney fees, and penalties for a job-related injury. The Town of Richwood appealed, and Royals answered seeking additional attorney fees. We reverse in part, affirm the remainder of the award, and award additional attorney fees.

Facts
In September 2002, Donna Royals worked as a school resource officer at *210 Richwood High School. Her job duties included maintaining order at the school, making sure that the school's perimeter was safe, and ensuring that school buses could safely cross the highway. Unless called to the police station, she would be at the school when it was in session from 7:00 a.m. until about 3:20 p.m. Royals patrolled the campus in a Richwood Police Department car and wore a Richwood police uniform. At about 2:00 p.m. on the afternoon of September 9, 2002, Royals completed her last perimeter check and parked the patrol car in front of the school. Royals testified:
And as I was opening up the driver's door, and I had put my left foot out on the pavement and turned with my body, and was taking my right foot and my right leg to push out, and my knee twisted.... I felt a tremendous amount of pain in my knee. I just sat there and and I rubbed on my knee for about five minutes before I could even move, because I wasn't sure if I could even walk.
There were no witnesses to this incident; however, Royals said that she limped into the school and notified another security officer that she had injured herself. She returned to her patrol car until school let out and then drove to the Richwood police station where she reported her injury to the duty dispatcher, Michelle Payzant. Royals did not seek medical care. She went home and put an Ace bandage, Thera-Gesic (a pain-relieving cream), and a heating pad on her knee and went to bed.
The next morning, Royals reapplied the Thera-Gesic cream and knee bandage. Although it was a school day, Royals had arranged to take time off from work to take a test. The exam was unrelated to her job and lasted four hours. Royals was not wearing her police uniform.
After she completed the test, Royals picked up lunch and drove to the police station to eat. When she arrived at the station, she spoke to the dispatcher to check in and believed that she was "on the clock." Royals stated that she would have been required to go to the school had there been an emergency.
After she ate and before leaving the station for the school, Royals went to the restroom. Royals testified:
When I went inside the bathroom, the the toilet is not bolted down, and it wobbles. So, as I was getting up, then my weight shifted somehow or another, and like I say, my kneethe only way I can describe it is it just exploded.
Another officer helped her into a chair and she told that officer, the police chief, and Michelle Payzant that she had injured her knee. Even so, Royals drove to the school to help the buses exit onto the highway. She asked Michelle Payzant to accompany her. Royals was able to drive to the high school and assist with traffic control while remaining in her police car. Thereafter, she returned to the police station, dropped off Payzant, picked up her husband, and went to see her doctor, Ron Morgan.
Dr. Morgan sent Royals to the hospital for x-rays[1] and, upon reviewing the x-rays, he put Royals in a leg cast for eight days. Royals testified that she remained in bed for these eight days.
Royals returned to work on October 16, 2002, on light duty as a dispatcher; she used crutches to move around and was able to elevate her leg on a chair while working. She worked until December 28, 2002, when she had arthroscopic knee surgery performed by Dr. Douglas Brown; this surgery was paid for by the town. After the procedure, the doctor prescribed *211 a course of physical therapy. Royals estimated that she attended five physical therapy sessions. On January 8, 2003, Dr. Brown wrote a progress note that stated in part, "The patient is started on rehab with Richland Therapy and is allowed to return to work on 1/13/03." Dr. Brown also noted that Royals was "Released to work 1-13-03. Dispatcher only." Royals testified that the police chief did not want her to return to work until she was fully released from the doctor's care.
Although Royals repeatedly requested weekly workers' compensation benefits, the town never paid them. On January 22, 2003, the town's claims manager, Risk Management, Inc. ("RMI"), disallowed any further physical therapy or medical treatment for Royals. In its letter discontinuing benefits, RMI informed Royals that "it is our opinion that you were not injured during the course and scope of your employment."
RMI, through its adjuster, Sharon Jenkins, based its decision partly on a letter to the adjuster written by Michelle Payzant describing her impression of the events surrounding Royals' injury. The letter reads:
On September 10, 2002, Donna Sue Royals was excused from work to attend an interview. She came to Richwood Police Department at or around 1300 hours to visit, and on her own doing, said she was going to go let the buses out at the school at 1500 hrs. She went to the restroom at or around 1330 hours. When exiting the restroom she alleged that she hurt her knee, that it had locked up on her pulling up her pants. Ofc. Tiffany Jackson pulled a chair over for Royals to sit down. At 1448 hrs. Royals and myself left in a patrol unit to let the buses out at the school. We returned at 1519 hrs., when after exiting the unit, she stated that her knee popped when she put her weight on it getting out of the patrol unit. Witnesses in the department during the time she hurt her knee in the restroom were: Det. Gary Jessie, Ofc. Tiffany Jackson, Dispatcher Mattie Allen, and Michelle Payzant. Be advised that Mattie Allen is no longer with this department. If you have any further questions, I will help you anyway I can. (Emphasis added.)
Jenkins also relied on a report of an interview with Royals conducted by another adjuster, Beverly Smith. This report generally coincides with Royals' testimony at trial and indicates that Royals hurt her knee getting out of the car the day before the incident in the bathroom. This report indicates that these incidents occurred on September 10 and 11, 2002, respectively. (They actually occurred on the 9th and 10th). Jenkins did not speak with Royals during the investigation.
Neither Michelle Payzant nor Beverly Smith was present at trial. Only Royals and Jenkins testified. After hearing the two witnesses and considering the evidence, the court concluded that Royals' knee injury was compensable. The WCJ specifically stated that she found Royals' testimony to be credible and that there was no evidence to discredit her version of events. The court further found that Royals was within the course and scope of her employment on September 10 when her knee gave out in the bathroom.
The court found that Royals was temporarily totally disabled ("TTD") from September 12, 2002, through October 15, 2002, and from December 28, 2002, through January 13, 2003, and awarded TTD benefits, in the amount of $200 per week. Likewise, the court awarded Royals supplemental earnings benefits ("SEB") from January 13, 2003, onward until she is released to full duty. The court also ordered *212 the town to pay all unpaid medical expenses and pay for Royals to complete physical therapy.
The WCJ imposed a $1,000 penalty on the police department for the failure to pay disability benefits between September 12, 2002, through October 15, 2002, and awarded Royals $3,000 in attorney fees. The WCJ imposed another $1,000 penalty on the police department for its premature termination of Royals' physical therapy and awarded her another $3,000 in attorney fees. From this judgment, the town now appeals. Royals has answered the appeal seeking an additional award of attorney fees.

Discussion

Employment Related Accident
The WCJ found that Royals was within the course and scope of her employment at the time she suffered both of the knee injuries she described. Whether the claimant has carried her burden of proof and whether testimony is credible are questions of fact to be determined by the compensation judge. Harris v. Coushatta Industrial Sand, Inc., 31,977 (La.App.2d Cir.06/16/99), 741 So.2d 143. Factual findings in worker's compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Chaisson v. Cajun Bag and Supply Co., 97-1225 (La.03/04/98), 708 So.2d 375. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. Thus, if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id., citing Banks v. Industrial Roofing & Sheet Metal Works, 96-2840, (La.07/01/97), 696 So.2d 551, 556.
Because Royals' second accident in the restroom at the police station produced the more immediate result, defendant's main challenge is whether Royals was on the clock at this time. This emphasis is misplaced.[2]
An injured employee is entitled to receive benefits for an injury that arises out of and in the course of her employment. La. R.S. 23:1031. An aggravation of a work-related injury is regarded as compensable and as resulting from the initial work-accident even if the aggravation occurs away from the job. Stewart v. Hospitals Affiliates Int'l, Inc. of Baton Rouge, 404 So.2d 944 (La.1981); Hughes v. General Motors Guide Lamp Division, 469 So.2d 369 (La.App. 2d Cir.1985); see also Berry v. River City Timber, 27,364 (La.App.2d Cir.09/27/95), 661 So.2d 668, writ denied, 95-2612 (La.01/05/96), 666 So.2d 293. If the work-related injury predisposed the plaintiff to the second injury, then a causal connection is found between the two accidents and the plaintiff is entitled to compensation. Kelly v. City of New Orleans, 414 So.2d 770 (La.1982); see also Hanover Ins. Co. v. Allstate Ins. Co., 554 So.2d 1261 (La.App. 1st Cir.1989); and Carter v. Rockwood Ins. Co., 341 So.2d 595 (La.App. 2d Cir.1977).
*213 In this case, Royals first injured her knee getting out of her patrol carclearly a work-related incidentand testified that the same weakened knee gave way the very next day. This is based on Royals' testimony which the WCJ believed. We must give great deference to the WCJ's credibility decision. With so little time between the first injury and the second, and no alternative explanation for the second injury, the latter injury is compensable as an aggravation of the first.

Penalties and Attorney Fees
The penalty provisions in effect at the time of the alleged denial of benefits control. Gay v. Georgia Pacific Corp., 32,653 (La.App.2d Cir.12/22/99), 754 So.2d 1101.[3]
Former La. R.S. 23:1201(F) provided, in part:
Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim....
....
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Penalties are stricti juris and should be imposed only when the facts clearly negate good faith and just cause in connection with the refusal to pay. Bolton v. Mike Fleming Construction, 36,521 (La.App.2d Cir.12/11/02), 833 So.2d 1177. The determination of whether an employer should be cast with penalties is a question of fact for the WCJ, whose findings shall not be disturbed on appeal absent manifest error. Taylor v. Garrett, 28,729 (La.App.2d Cir.10/30/96), 682 So.2d 831.
In this case we find no manifest error in the WCJ's imposition of a penalty. The RMI investigator had the report of an interview with Royals and a letter from Michelle Payzant concerning the incident. The report conflicted with the letter with regard to Royals' duty status on September 10, 2002. Payzant's letter contains contradictions. RMI should have investigated this claim further, but failed to do so before denying benefits. This is particularly important as the interview by Beverly Smith with Royals clearly showed an accident the day before. This first accident was totally ignored by Jenkins.
An award of attorney fees is a type of penalty in workers' compensation matters. Ward v. Phoenix Operating Co., 31,656 (La.App.2d Cir.02/24/99), 729 So.2d 109. The amount of the fee must be assessed in accordance with law, i.e., the fee must be reasonable. Ward, supra. We do not find the $3,000 attorney fee to be an abuse of discretion.
Under La. R.S. 23:1203(A), an employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment related to an employee's work-related injury. The town commenced, but then terminated, the payment of medical benefits.
*214 Former La. R.S. 23:1201.2 provided, in part:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims.
This provision only allowed an award of attorney fees, not a penalty, for the discontinuance of benefits. Gilcrease v. Wal-Mart Stores, 36,523 (La.App.2d Cir.12/11/02), 843 So.2d 415, writ denied, 03-0113 (La.03/21/03), 840 So.2d 542. Because the statute did not provide for a penalty for the discontinuance of benefits, that portion of the judgment must be reversed. However, we find no error in the award of attorney fees given the de minimis support for the discontinuance of medical benefits, particularly given that Royals was in the course of therapy required after surgery approved by her employer.
Plaintiff answered the appeal seeking additional attorney fees for work necessitated by this appeal. Defendant obtained only minor relief from the $1,000 penalty imposed for the discontinuation of benefits while losing in all substantive respects. We believe an additional award of legal fees is in order. Based on the record, we award the sum of $500. See Smith v. Tudor Construction, 25,783 (La.App.2d Cir.05/04/94), 637 So.2d 666.

Conclusion
For the above reasons, the judgment of the Workers' Compensation Judge is affirmed, except as to the $1,000 penalty for the discontinuance of medical benefits, which is not provided for by the law. We make an additional award of $500 in attorney fees for this appeal. Costs of this appeal are assessed to defendant.
REVERSED IN PART, AMENDED IN PART, and AS AMENDED, AFFIRMED.
NOTES
[1] The x-ray report in the record is inexplicably dated "09/09/02."
[2] However, because Royals had been on a personal mission that morning, she checked in at her employer's main office before returning to the school. The record does not reveal how she ordinarily checked into work, but her choice on this day of checking in at the police department after a personal errand was reasonable and was, given the finding of the WCJ, work-related. We would therefore conclude that the WCJ was not manifestly erroneous in finding that the accident on September 10, 2002, was within the course and scope of Royals' employment.
[3] The statutes governing penalties and attorney fees in compensation cases changed, in some ways materially, on July 3, 2003, when La. R.S. 23:1201 was amended and La. R.S. 23:1201.2 was repealed by the enactment of Act 1204 of 2003.