960 So.2d 1216 (2007)
Laura PARDEE, Plaintiff-Appellee,
v.
FOREST HAVEN NURSING HOME, Defendant-Appellant.
No. 42,321-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2007.
*1218 Gold, Weems, Bruser, Sues & Rundell by Samuel N. Poole, Jr., Alexandria, for Appellant.
Gary D. Nunn, for Appellee.
Before CARAWAY, MOORE and LOLLEY, JJ.
LOLLEY, J.
Forest Haven Nursing Home appeals a judgment from the Office of Workers' Compensation, District 1-E, Parish of Ouachita, State of Louisiana in favor of Laura Pardee. For the following reasons, we reverse in part and affirm in part.

FACTS

Medical History
Laura Pardee was working as a certified nurse's assistant ("CNA") at Forest Haven Nursing Home ("Forest Haven"), where she injured her left wrist while transferring a patient from a bed to a wheelchair on March 19, 2002. That same day she obtained treatment for her injury from Dr. John Overby. Her x-rays showed no evidence of fracture, dislocation, or soft tissue abnormality. She was then referred to Dr. Richard Ballard who treated her for pain and swelling to her wrist. After a CT scan was performed, Dr. Ballard diagnosed her condition as tendinitis of the wrist. Pardee had returned to Forest Haven on light duty, but Dr. Ballard later took her off work due to swelling in her left hand.
Pardee continued to complain regarding her wrist, so she was referred to Dr. Marion Milstead in September 2002. The diagnostic tests ordered by Dr. Milstead all came back negative, and he prescribed pain medication as well as anti-inflammatories to treat her symptoms. Additionally, he gave her a steroid shot and put her wrist in a brace. In December 2002, when Pardee's wrist was still swollen and tender, Dr. Milstead ordered another battery of tests to look for rheumatoid arthritis, lupus, vascular disease, and diabetes. All of her lab work returned as normal, which ruled out the possibility of metabolic origin, leaving irritation solely from a sprain type activity as the source of Pardee's problem. Pardee was referred to Dr. Larry Broadwell, a rheumatologist, to examine other potential causes for her complaints; however, Dr. Broadwell did not find any cause for Pardee's wrist ailment. He recommended that she continue treatment with Dr. Milstead, who continued Pardee on the same course of treatmentmainly anti-inflammatories.
*1219 By May 22, 2003, Dr. Milstead believe that Pardee had reached maximum medical improvement, and he recommended a Functional Capacity Evaluation and a possible disability rating. He also recommended arthroscopic inspection of the wrist so as to evaluate Pardee's joint visually. In July 2003, Pardee was seen by a physician chosen by Forest Haven, Dr. Joe Morgan, an orthopaedic surgeon. He reviewed her medical history in connection with her wrist treatment and examined her. Dr. Morgan determined Pardee to be at maximum medical improvement from her on-the-job injury. He further did not find her in need of medication, bracing, splinting, or any type of surgery to her wrist. He did not assign any physical impairment rating to Pardee, and he did not place any functional restrictions on her. In fact, Dr. Morgan advised that Pardee could "resume her usual occupation of CNA without restriction based on any injury she may have sustained. . . ."
On August 27, 2003, Forest Haven terminated Pardee's temporary total disability ("TTD") benefits on the basis of Dr. Morgan's report. On September 9, 2003, Dr. Milstead prepared a letter report acknowledging his agreement with Dr. Morgan's recommendations, except as to Dr. Morgan's employment recommendations for Pardee. Dr. Milstead reported that because Pardee worked ". . . as a Nurse Assistant with the strenuous type activities required as a Nurse Assistant, I would recommend restrictions that would limit her to no lifting over approximately 5 to 10 pounds and avoid repetitive flexion and extension of her fingers." Dr. Morgan again mentioned the possibility of arthroscopic inspection of the joint, but had no other recommendations for other treatment.

Procedural History
On December 19, 2003, Pardee filed her Disputed Claim for Compensation. Due to the differing opinions of Drs. Morgan and Milstead, the third-party administrator for Pardee's compensation claim requested an independent medical examination. Pursuant to that request, Pardee was examined by Dr. Carl Bilderback in March 2004, who was unable to find the cause of Pardee's pain and reported no objective findings consistent with her complaints. He did not believe that arthroscopic surgery would be helpful, and he opined that she was at maximum medical improvement. Further, he did not believe she was in need of further medical or surgical treatment for her injury. Dr. Bilderback felt that Pardee could return to work as a CNA, even though it might cause her pain.
At the trial of the matter, the parties stipulated as to the work-related nature of Pardee's injury, as well as her receipt of compensation benefits through August 27, 2003, at the rate of $160.00 per week, based on an average weekly wage of $240.00. Following the trial, the workers' compensation judge ("WCJ") entered judgment in favor of Pardee, awarding her TTDs from August 27, 2003 through October 30, 2003. Forest Haven was also determined to have acted arbitrarily and capriciously for failing to reinstate Pardee's benefits following Dr. Milstead's September 9, 2003 letter, and it was assessed a penalty in the amount of $2,000.00. Pardee was also awarded attorney fees in the amount of $3,500.00. The trial court further determined that Pardee was entitled to arthroscopic surgery and continuing medical treatment for her injury. Finally, Forest Haven was ordered to pay for all costs of the proceedings, including Pardee's deposition costs. This appeal by Forest Haven ensued.

DISCUSSION

Standard of Review
Factual findings in workers' compensation cases are subject to the manifest *1220 error or clearly wrong standard of appellate review. The issue to be resolved by the appellate court is not whether the workers' compensation judge was right or wrong, but whether the factual conclusion was reasonable. Accordingly, where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 1996-2840 (La.07/01/97), 696 So.2d 551; Nelson v. City of Grambling, 31,303 (La.App.2d Cir.12/09/98), 722 So.2d 358, writ denied XXXX-XXXX (La.02/26/99), 738 So.2d 588. The question of whether the claimant is entitled to compensation benefits is ultimately a question of fact, and the workers' compensation judge's resolution of that issue may not be disturbed by the appellate court in the absence of manifest error or unless clearly wrong. Nelson, supra. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Lee v. Heritage Manor of Bossier City, 41,828 (La. App.2d Cir.03/14/07), 954 So.2d 276.

Indemnity Benefits
In its first assignment of error, Forest Haven argues that the trial court erred in finding Pardee entitled to TTD benefits from August 27, 2003 through October 30, 2003. Specifically, Forest Haven questions whether an employer is required to reinstate TTD benefits when no physician has unequivocally stated that the claimant could not return to work in any capacity, and the employer has been advised by an examining physician that the claimant could return to work without restriction. Forest Haven maintains that Dr. Milstead, in his September 9th letter, did not state that Pardee was unable to work, but that she could work with specified restrictions.
To obtain an award of TTD benefits, a claimant must prove by clear and convincing evidence, unaided by any presumption of disability, that she is physically unable to engage in any employment or self-employment. La. R.S. 23:1221(1)(C); Brantley v. Delta Ridge Implement, Inc., 41,190 (La.App.2d Cir.06/28/06), 935 So.2d 308. This is the standard of proof which a claimant must satisfy when he files a disputed claim form seeking an award of TTD benefits after the employer or insurer terminates voluntary payments of TTD benefits. To prove a matter by clear and convincing evidence, as required to establish entitlement to TTD benefits, means to demonstrate that the existence of a disputed fact is highly probable, i.e., much more probable than its nonexistence. Id.
Here, we agree with Forest Haven that the WCJ was manifestly erroneous in finding that Pardee was entitled to TTD benefits for the period of time between August 27, 2003 and October 30, 2003. Simply put, Pardee failed to prove by clear and convincing evidence that she was physically unable to engage in any employment or self-employment. Notably, the WCJ offered little explanation in her oral reasons for judgment to support her conclusion, only stating that "[a] review of the evidence has persuaded this Court that the claimant is entitled to received [sic] temporary total disability benefits from August 27th, 2003, until . . . October 30th, 2003." However, our review of the same evidence, does not indicate that Pardee was clearly physically unable to engage in any employment or self-employment during that period of time.
Specifically, Pardee argued that Forest Haven terminated her benefits based only on Dr. Morgan's July 2003 report that Pardee could "resume her usual occupation of CNA without restriction based on any injury she may have sustained. . . ." If Dr. *1221 Morgan's report had been the end of the line, we might have agreed with Pardee. However, the story did not end with Dr. Morgan's opinion, but with the September 9, 2003 report by Dr. Milstead in response to Dr. Morgan's July 2003 report. Therein, Dr. Milstead agreed with Dr. Morgan's impressions and recommendations, but whereas Dr. Morgan opined that Pardee could return to work specifically as a CNA, Dr. Milstead did not. Dr. Milstead, in his report determined that:
I do agree, as mentioned, with the reports of Dr. Morgan except for the part, since she did work as a Nurse' [sic] Assistant with the strenuous type activities required as a Nurse' [sic] Assistant, I would recommend restrictions that would limit her to no lifting over approximately 5 to 10 pounds and avoid repetitive flexion and extension of her fingers.
Dr. Milstead's letter is critical, because whereas Dr. Milstead did place restrictions on Pardee, he did not state explicitly that she was unable to work. In fact, the inference to be drawn from Dr. Milstead's letter is that Pardee could work, not that she could not work. Importantly, the determination to make in the award of TTD benefits is not whether the claimant could perform the previous work, but whether the claimant could perform some sort of work. It is of no import whether Pardee could perform the job she had before-it is only required that she could perform some job. Furthermore, although Dr. Milstead stated he could not recommend that Pardee work as a CNA, he testified that he did discuss with her looking for a different type of job. Dr. Milstead obviously indicated that Pardee could perform some type of work (i.e., work where she did "no lifting over approximately 5 to 10 pounds and avoid[ed] repetitive flexion and extension of her fingers").
The restrictions stated by Dr. Milstead are a far cry from an order that Pardee could perform no work at all, and certainly fall short of proving that Pardee's TTD benefits should have been reinstated. Obviously, the equivocal opinion by Dr. Milstead is not clear and convincing evidence that Pardee was unable to work. Therefore, the WCJ erred in concluding that the evidence before it supported a finding that Pardee could not work for the period in question and was, as a result, entitled to TTD benefits. Consequently, we reverse the trial court's award of TTD benefits for the period of August 27 through October 30, 2003.
Additionally, the trial court had also imposed penalties and attorney fees against Forest Haven for failing to reinstate Pardee's TTD benefits after receiving Dr. Milstead's September 9th letter. However, considering our findings herein that Forest Haven was not arbitrary and capricious for failing to reinstate Pardee's TTD benefits, the awards of penalties and attorney fees for $2,000.00 and $3,500.00, respectively, were also in error.

Arthroscopic Surgery
Forest Haven also argues that the trial court erred in finding Pardee was entitled to arthroscopic surgery and continuing treatment for her left wrist. Here, Forest Haven maintains that the trial court erred in ordering the arthroscopic surgery, because the sole purpose of the arthroscopic surgery would be to confirm Dr. Milstead's suspected diagnosis of chronic synovitis, which he was already treating Pardee for. Forest Haven notes that it is not obligated to pay for medical treatment undertaken solely for the purpose of obtaining an opinion that does not affect the treatment of a claimant. We disagree that is the case here.
*1222 An employer must furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of the state as legal. La. R.S. 23:1203(A); Collins v. Patterson Drilling, 39,668 (La.App.2d Cir.05/11/05), 902 So.2d 1264. Jurisprudence provides that an employee seeking payment for medical or surgical treatment must prove that the expenses are reasonably necessary for treatment of a medical condition caused by a work-related injury. Collins, supra; Tatum v. St. Patrick's Psychiatric Hosp., 32,616 (La.App.2d Cir.12/30/99), 748 So.2d 1276, writ denied, XXXX-XXXX (La.03/24/00), 758 So.2d 157.
Like the WCJ, we have carefully reviewed the deposition testimony of Dr. Milstead, and Forest Haven correctly characterizes Dr. Milstead's testimony as well as his reasoning for the surgery. However, we do not consider the WCJ's conclusion on this issue to be manifest error, because we understand how such a diagnostic procedure could be necessary and useful, even though it might only confirm the condition which Pardee was already being treated for. Specifically, we note the WCJ's opinion that:
[t]he arthroscopic surgery will give Dr. Milstead a greater degree of understanding about [Pardee's] injury. All other avenues were explored in an effort to reach a resolution. They were not successful. The arthroscopic surgery is not only for diagnostic purposes. It is recommended to allow revelation about the extent and source of [Pardee's] problem. She's entitled to have that revelation sought.
Primarily, we note that despite Dr. Milstead's ongoing treatment of Pardee, she continued to have unexplained pain and swelling in the wristdespite his diagnosis of her condition. Thus, irrespective of the diagnosis by Dr. Milstead, Pardee was not responding to the treatment she was receiving. Whereas Dr. Milstead thought the arthroscopic surgery would probably be consistent with his diagnosis, it is conceivable that the arthroscopy could come back with a different result. Notably, Dr. Milstead stated that ". . . based on the fact that she's still hurting, the only thing left that may find something is to look in the joint." Clearly, he had not ruled out the possibility that something else was causing Pardee's pain and swelling.
Regarding the further medical treatment of Pardee other than the arthroscopic surgery, Dr. Milstead explicitly recommended in his deposition that if she continued to hurt, Pardee would need intermittent bracing and anti-inflammatory medication. Obviously, however, if the arthroscopic surgery resulted in a different diagnosis, it might be necessary to alter Pardee's course of medical treatment.
Pardee was injured while performing her job at Forest Haven, and even following a significant period of time after, she was still experiencing pain and swelling-enough that she could no longer work in the field in which she was trained. Dr. Milstead believed her complaints, and there is nothing in this record to indicate that Pardee was malingering. In fact, the WCJ noted that the record seemingly indicated the various physicians' beliefs that Pardee was a credible patient. Considering the record in its entirety and Pardee's continued unimproved medical condition, we cannot conclude that the WCJ committed manifest error in ordering that Pardee was entitled to the arthroscopic surgery and continuing treatment for her left wrist. This assignment of error by Forest Haven is without merit.

Court costs
Finally, Forest Haven argues that the WCJ erred in assessing it with *1223 the costs of the litigation proceedings. The allocation of court costs among the parties is a matter which is subject to the discretion of the trial court and its allocation of those costs will not be disturbed absent evidence of an abuse of that discretion. Shreveport Elec. Co., Inc. v. Oasis Pool Service, Inc., 38,776 (La.App.2d Cir.09/29/04), 889 So.2d 274, writ denied, XXXX-XXXX (La.04/01/05), 897 So.2d 613; see also La. C.C.P. art. 1920. In this case, Pardee had to bring suit against Forest Haven not only for the TTD benefits, but also for her ongoing medical treatment. Considering that Pardee ultimately prevailed in a portion of her claim against Forest Haven, we do not find the WCJ's award of all litigation costs against Forest Haven as being inequitable. Thus, we affirm that portion of the judgment as it pertains to the assessment of costs against Forest Haven.

CONCLUSION
For the foregoing reasons, the judgment in favor of Laura Pardee is reversed as it relates to the award of temporary total disability benefits and the resultant award of penalties and attorney fees against Forest Haven. The judgment is affirmed as it regards Pardee's arthroscopic surgery, continuing medical treatment, and costs of the trial proceedings. Costs of the appeal proceedings are to be divided by the parties equally.
REVERSED IN PART; AFFIRMED IN PART.