968 So.2d 833 (2007)
Donna ROYALS, Plaintiff-Appellant
v.
TOWN OF RICHWOOD, Defendant-Appellee.
No. 42,585-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2007.
Rehearing Denied November 29, 2007.
*834 Law Offices of Street & Street, by C. Daniel Street, Monroe, for Appellant.
*835 Hudson, Potts & Bernstein, L.L.P., by Brian P. Bowes, Travis Oliver, IV, Monroe, for Appellee.
Before BROWN, MOORE and LOLLEY, JJ.
MOORE, J.
The claimant, Donna Royals, appeals a judgment of the Office of Workers' Compensation which denied her claims for supplemental earnings benefits ("SEB"), reimbursement of nonprescription medications and medical supplies, and prescriptions and physical therapy recommended by her treating orthopedic surgeon, and denied her claims for penalties and attorney fees for the employer's failure to pay or provide these benefits. For the reasons expressed, we reverse the denial of SEB, but in other respects affirm and render.

Factual Background
In August 2002, the Town of Richwood hired Ms. Royals as a school resource officer at Richwood High School; her job was to oversee the students and help maintain order, including breaking up any fights that may erupt in the two-story building. After making a perimeter check on the afternoon of September 9, 2002, Ms. Royals twisted her right knee while getting out of her patrol car. The next day, she reinjured the knee in the restroom of the police station. Her family doctor sent her to the hospital, where she obtained treatment; on October 16, 2002, she returned to light duty work as a dispatcher. Around this time, she also began buying over-the-counter pain relievers.
In late November 2002 she saw Dr. Douglas Brown, an orthopedic surgeon, who suspected a torn meniscus. He performed arthroscopic surgery on December 28, chiefly to debride and shave the meniscus; he prescribed therapy and kept her off work until January 13, 2003, when he released her to work as a dispatcher. However, Ms. Royals has never returned to work.
Nine days after the work release, Richwood's claims manager, Risk Management Inc. ("RMI"), discontinued her therapy and medical treatment on grounds that the initial accident was not work-related; it had never paid her any weekly indemnity benefits.
Ms. Royals filed a contested claim for compensation; after a trial in October 2003, the Workers' Compensation Judge ("WCJ") awarded her temporary, total disability benefits for approximately seven weeks ending January 13, 2003, SEB from that date onward, and penalties of $2,000 and attorney fees of $6,000 for the failure to pay temporary, total disability benefits and provide the therapy prescribed by Dr. Brown. On Richwood's appeal, this court affirmed the finding of a work-related accident, reduced the statutory penalty to $1,000, and awarded claimant's counsel $500 for having to defend the appeal. Royals v. Town of Richwood, 38,738 (La. App. 2 Cir. 8/18/04), 880 So.2d 208.
Meanwhile, Ms. Royals continued to buy over-the-counter pain relievers and knee braces; simultaneously, she was going to E.A. Conway Hospital for cortisone injections, Lortab and Bextra, but still complained of a locking sensation in her knee. In October 2004, she returned to Dr. Brown, who ordered an MRI. This showed progressive degenerative arthritis, which Dr. Brown ascribed to the initial accident. He recommended a complete knee replacement, which was performed in January 2005. He described the procedure as "uneventful," and her postoperative progress as good. In late March 2005, he said she could return to "modified work."
RMI then retained a vocational rehabilitation consultant, Younger & Associates, to perform a vocational assessment of Ms. *836 Royals. On July 12, Younger's employee, Alice Rogers-Bond, met with Richwood's police chief, Robert Kelly, to get a job analysis of the position of school resource officer. She typed her report directly into her laptop computer; there were no original notes to compare for accuracy. This report characterized the job as mostly sedentary to light, with frequent to intermittent standing and walking, and medium duty "only in cases where physical restraint would be necessary; however, she [Ms. Royals] had not had to implement this during her employment, 5%." Ms. Rogers-Bond also checked "rarely" for stair climbing, or "up to one hour in an eight-hour day." Chief Kelly generally confirmed the information in the job analysis, except that Ms. Royals had told him she actually arrested some students for fighting in her three-week tenure at Richwood High. He testified that if she had asked, he would have "made a place for her," but that he had replaced her and his department had actually laid off several officers. He agreed that in her current condition, Ms. Royals could not work as a school resource officer.
Ms. Rogers-Bond sent the job analysis to Dr. Brown, who responded that the job fell within Ms. Royals' physical capabilities. Dr. Brown gave her a full release to work on August 17, 2005. On receipt of this release, Richwood discontinued Ms. Royals' SEB and medical benefits.
In May 2005, Ms. Royals filed the instant contested claim seeking reimbursement for mileage, medical expenses paid to her family doctor, and nonprescription medicines and medical supplies she bought from October 2002 through early January 2005. By amended claim, she contested the termination of SEB. By a second amended claim, she sought additional medical treatment from Dr. Brown, physical therapy, and reimbursement of E.A. Conway bills and prescription drugs, all arising from a knee injury sustained in a fall at her parents' house in December 2005 when her right knee buckled or gave way beneath her. Each claim included a demand for penalties and attorney fees.

Action of the WCJ
The WCJ heard all three claims at a single trial in September 2006. After taking the case under advisement, the WCJ rendered oral reasons, carefully summarizing the testimony, Ms. Royals' medical records and the job analysis prepared by Ms. Rogers-Bond. The WCJ noted that the job analysis was erroneous in stating that Ms. Royals had never had to use physical restraint during her employment; however, the rest of the report was clear that she would be required to use physical techniques to intervene in fights. Even when presented with this information, Dr. Brown did not recant his earlier approval of the job; the WCJ therefore denied any further SEB, together with the claim for penalties and attorney fees.
As for the nonprescription medicines and medical devices, the WCJ stated that the claimant's burden was to prove that these items were reasonable, necessary and related to the initial injury. Noting that Ms. Royals was buying nonprescription items even while going to E.A. Conway for treatment and several prescription drugs, and that the medical records did not show that additional items were needed, the WCJ denied this claim, as well as the request for penalties and attorney fees.
Finally, the WCJ found that Richwood failed to pay Ms. Royals' family doctor's fee, mileage and prescription costs within 60 days of receiving proof of the claim; for this, she assessed a penalty of $2,000 and an attorney fee of $5,000. However, she denied all other claims for medical expenses, as the medical records did not show that the fall at her parents' house *837 was related to the initial, compensable injury.

Discussion: Nonprescription Medical Expenses
By her first assignment of error, Ms. Royals urges the WCJ erred in failing to order reimbursement of her nonprescription medication and medical devices incurred during the period of denial of benefits. She contends that because of extreme pain, she tried several types of over-the-counter medications and salves, as well as a knee brace and two knee stabilizers. She concedes there is no caselaw approving the reimbursement of nonprescription medications, but submits that these expenses are authorized by La. R.S. 23:1203 A. By her fourth assignment, she argues the WCJ erred in failing to award penalties and attorney fees for Richwood's refusal to pay these expenses.
Richwood responds that Ms. Royals had the burden of proving both that the treatment was necessary and related to the compensable accident. Todd v. Security Industrial Ins., 33,233 (La.App. 2 Cir. 5/15/00), 759 So.2d 1082. Aside from her own testimony, however, she presented no evidence that nonprescription medications were necessary, and the WCJ was entitled to disbelieve her testimony. Taylor v. Wal-Mart Stores Inc., 40,179 (La.App. 2 Cir. 9/21/05), 914 So.2d 579, writ not cons., XXXX-XXXX (La.4/17/06), 926 So.2d 500, cert. denied, ___ U.S. ___, 127 S.Ct. 982, 166 L.Ed.2d 783 (2007).
In the event of a compensable injury, the employer is obligated to furnish "all necessary drugs, supplies, hospital care and service, medical and surgical treatment, and any nonmedical treatment recognized by the laws of the state as legal." La. R.S. 23:1203 A; Authement v. Shappert Engineering, XXXX-XXXX (La.2/25/03), 840 So.2d 1181. The claimant must prove by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by a work-related accident. Pardee v. Forest Haven Nursing Home, 42,321 (La.App. 2 Cir. 6/20/07), 960 So.2d 1216. The WCJ's factual findings will not be set aside unless they are clearly wrong in light of the record viewed in its entirety. Dean v. Southmark Construction, XXXX-XXXX (La.7/6/04), 879 So.2d 112; Pardee v. Forest Haven Nursing Home, supra.
The statute, R.S. 23:1203 A, does not distinguish between prescription and nonprescription medicines; however, the claimant still must prove that these items are reasonably necessary to treat a compensable injury. Ms. Royals incurred many of the claimed expenses while she was receiving treatment at E.A. Conway Hospital, but did not explain why over-the-counter analgesics like Advil and Tylenol were necessary on top of Lortab, Bextra, cortisone and Zoloft. At the deposition, nobody asked Dr. Brown if additional nonprescription items would have been needed. The WCJ found inadequate proof of their necessity, a factual finding that we cannot disturb on this record. In short, we perceive no manifest error in the denial of this claim and, a fortiori, the claim for penalties and attorney fees. These assignments lack merit.

Prescriptions and Physical Therapy
By her third assignment of error, Ms. Royals urges the WCJ erred in failing to award the cost of prescriptions and physical therapy ordered by Dr. Brown. These expenses arose from a fall in her back yard in September 2005 and a fall from her parents' back porch in December 2005, both of which she ascribed to weakness in the replacement knee. She contends that if a work-related injury predisposes the claimant to a second injury, a causal connection is found and the claimant *838 is entitled to compensation. Kelly v. City of New Orleans, 414 So.2d 770 (La.1982); Royals v. Town of Richwood, supra, and citations therein. She concedes that Dr. Brown recalled only the fall from her parents' porch and did not ascribe it to her prior, work-related injury; however, she contends that the E.A. Conway records support her testimony that weakness in the replacement knee caused her to fall. By her fourth assignment, Ms. Royals urges the WCJ erred in failing to award penalties and attorney fees for the failure to pay for these items.
Richwood responds that in his deposition testimony, Dr. Brown clearly stated he was unaware how Ms. Royals injured her knee in March 2006, and that aside from her own self-serving testimony, there was no evidence to connect the two incidents. It concludes that the WCJ was not clearly wrong.
As noted, the WCJ's factual findings will not be set aside unless they are clearly wrong in light of the record viewed in its entirety. Dean v. Southmark Construction, supra; Pardee v. Forest Haven Nursing Home, supra. The manifest error rule applies equally to findings based on live testimony and documentary evidence. Shephard v. Scheeler, 96-1690 (La.10/21/97), 701 So.2d 1308; Feild v. General Motors Corp., 36,339 (La.App. 2 Cir. 9/18/02), 828 So.2d 150.
In deposition, Dr. Brown said of Ms. Royals' March 15, 2006, office visit: "She fell off her porch and I'm not sure how that happened, but, you know, whatever reasons she did and she wanted to have her knee checked[.]" Finding minor swelling, he diagnosed a hyperextension strain and recommended therapy. Notably, he was never asked whether the work-related injury could have caused or contributed to the fall. We have closely reviewed the records from E.A. Conway and find them inconclusive. The emergency room record of December 13, 2005, is virtually illegible, showing only that a 52-year-old white female "fell off porch" and reported a prior "surgery rt. knee, total knee." The orthopedic clinic record of January 18, 2006, is slightly more legible, noting as the chief complaint, "R TKR [right total knee replacement] 1/05 by Dr. Brown, states knee gives out and fell 12/13/05," but does not clearly show that any doctor or therapist attributed that fall to her work-related injury.
We are sensitive to the fact that a replacement knee might be unsteady, and to the jurisprudence that a compensable injury may predispose the claimant to subsequent injuries, but the WCJ found an absence of medical evidence to connect the incidents in this case. Although sitting as a fact finder we might perhaps have assessed this evidence differently, we cannot say on this record that the WCJ was plainly wrong to find a lack of causation. We perceive no manifest error in the denial of this claim and, a fortiori, the claim for penalties and attorney fees. These assignments of error lack merit.

Denial of SEB
By her second assignment, Ms. Royals urges the WCJ erred in failing to award her SEB. She contends that the vocational rehabilitation agent, Ms. Rogers-Bond, prepared a job description that was inaccurate at best, and this misled Dr. Brown into approving her for the job of school resource officer. She cites Chief Kelly's candid admission that she cannot do the job with her bad knee, and submits that Richwood failed to prove that any other job was available to her. Banks v. Industrial Roofing & Sheet Metal Works, 96-2840 (La.7/1/97), 696 So.2d 551. By her fourth assignment, Ms. Royals urges the WCJ was plainly wrong not to award penalties *839 and attorney fees for Richwood's termination of SEB.
Richwood responds that Ms. Royals' argument is entirely factual and that the WCJ's findings are not plainly wrong.
When work-related injuries do not result in total disability, but rather leave the employee unable to earn 90% of her preinjury wage, the statute authorizes an award of SEB. La. R.S. 23:1221(3). To prevail on an SEB claim, the employee must meet an initial burden of proving, by a preponderance of the evidence, that her work-related injury has resulted in an inability to earn that amount. Banks v. Industrial Roofing & Sheet Metal, supra; Taylor v. Columbian Chemicals, 32,411 (La.App. 2 Cir. 10/27/99), 744 So.2d 704. Only after the claimant makes this prima facie showing does the burden shift to the employer to show that employment is generally available within the claimant's physical limitations and in her or the employer's reasonable geographic region. Id. The WCJ's factual findings on a claim for SEB are subject to the manifest error rule. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161; Taylor v. Columbian Chemicals, supra.
At trial and on appeal, the parties have vigorously argued whether the job analysis prepared by Ms. Rogers-Bond was accurate, and whether it misled Dr. Brown; the WCJ found that it was indeed inaccurate in one salient respect  stating Ms. Royals had never actually resorted to physical restraint during her three weeks as a school resource officer at Richwood High. The issue, however, is largely beside the point. Chief Kelly verified that the school resource officer would have to climb the stairs as needed to maintain order, and use physical restraint some 5% of the time. As Ms. Royals shows, Chief Kelly candidly admitted that she could not do the job in her current condition. Moreover, although Dr. Brown never entirely retracted his release to full-duty work, he wavered:
Well, my experience has been that people who work in factories that have several levels of stairs, let's say that they have to go up and down frequently during the course of the day  and I'm talking about every hour they go up and down  do have problems with their knee replacement and it bothers them. * * * We don't recommend people being in jobs where they have to really physically go up and down stairs frequently.
With respect to breaking up fights among students, Dr. Brown said, "Well, I'm not sure she should be doing that whether she's had a knee replacement or not. So she would be certainly less capable of doing that than a normal person." Regardless of any deficiency of the job analysis, this record preponderates to show that Ms. Royals is unable to earn wages equal to 90% or more of her wages at the time of the injury.
The burden therefore shifted to Richwood to show that employment was generally available within Ms. Royals' physical limitations and in her or the employer's reasonable geographic area. La. R.S. 23:1221(3)(c)(i); Banks v. Industrial Roofing & Sheet Metal, supra. The record contains no evidence whatsoever regarding any other employment that would meet these criteria. Chief Kelly admitted that owing to fiscal difficulties, the town had laid off several employees; he did not mention any openings. On this record, Richwood did not rebut Ms. Royals' prima facie showing of qualification for SEB. The judgment will be reversed, ordering the reinstatement of SEB effective August 17, 2005, and continuing in accordance with law.
By her fourth assignment, Ms. Royals contests the WCJ's failure to *840 award penalties and attorney fees for Richwood's arbitrary and capricious termination of SEB. La. R.S. 23:1201 I. We find, however, that Richwood acted on the strength of Dr. Brown's work release; on the record presented, this negates any showing of a "willful and unreasonable action, without consideration and regard for the facts and circumstances presented." J.E. Merit Constructors v. Hickman, XXXX-XXXX (La.1/17/01), 776 So.2d 435. Moreover, the finding of the WCJ in favor of the employer is "virtually conclusive that its actions were reasonable and were not arbitrary and capricious." Id. It is very rarely appropriate for an appellate court to award penalties and attorney fees based on an employer's actions which the trier of fact previously found not to be arbitrary and capricious, and this case is not one of those rare exceptions. The instant claim under R.S. 23:1201 I is without merit.

Additional Attorney Fees
By her fifth assignment of error, Ms. Royals seeks additional attorney fees for work on this appeal. She shows that this court awarded additional attorney fees in the previous appeal, Royals v. Town of Richwood, supra, and requests a reasonable amount for pursuing the instant appeal.
Richwood responds that an increase in attorney fees is usually awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated additional work on the part of plaintiff's counsel, provided the plaintiff appropriately requests an increase. Smith v. Tudor Const. Co., 25,783 (La.App. 2 Cir. 5/4/94), 637 So.2d 666. Richwood concludes there is no authority to award additional attorney fees to the claimant's attorney for pursuing her own appeal.
A workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending the employer's unsuccessful appeal. Frith v. Riverwood Inc., XXXX-XXXX (La.1/19/05), 892 So.2d 7. Ms. Royals is obviously not entitled to additional attorney fees under this theory as Richwood did not take the instant appeal.
The court of appeal may also award attorney fees on appeal if it finds that the employer wrongly failed to begin paying benefits in violation of La. R.S. 23:1201 F, or wrongly discontinued benefits in violation of La. R.S. 23:1201 I. For the reasons already discussed, Richwood was not arbitrary, capricious or without probable cause in discontinuing Ms. Royals' SEB when it received the work release. This assignment of error lacks merit.

Conclusion
For the reasons expressed, the judgment is reversed insofar as it denied the claim for continued SEB. Judgment is rendered herein in favor of Donna Royals and against the Town of Richwood, awarding Ms. Royals supplemental earnings benefits in the amount of $200.00 per week, beginning August 17, 2005, together with legal interest thereon from due date of each payment until paid, and continuing in accordance with law. The judgment is in all other respects affirmed. Costs of appeal totaling $981.75 are to be paid by the Town of Richwood.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.
BROWN, C.J., concurs in part, dissents in part.
BROWN, C.J., concurring in part and dissenting in part.
I agree that claimant was clearly entitled to supplemental earnings benefits (SEB). The town's consultant, Younger & *841 Associates, discontinued payment of SEB without consulting with the town's police chief. The chief testified that he knew that claimant could not do the work as a resource officer and that he had no other job available. The chief agreed that the job description presented by Younger & Associates to Dr. Brown was inaccurate. What the chief knew is attributable to the town. I would award attorney fees as the town knew that claimant was unable to do the work required when its consultant, Younger & Associates, abruptly cut off the SEB.
APPLICATION FOR REHEARING
Before BROWN, STEWART, CARAWAY, MOORE and LOLLEY, JJ.
Rehearing denied.