# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-1287


MICHAEL VIDRINE

VERSUS

TECHE ELECTRIC SUPPLY, L.L.C.


\*\*\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 02
PARISH OF RAPIDES, NO. 07-04425
HONORABLE JASON G. OURSO,
WORKERS' COMPENSATION JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


## JIMMIE C. PETERS
## JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


Court composed of Oswald A. Decuir, Jimmie C. Peters, and Marc T. Amy, Judges.


**AFFIRMED.**

**Chuck R. West**
**West & Vidrine**
**Post Office Drawer 1019**
**Ville Platte, LA 70586**
**(337) 363-2772**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
        **Michael Vidrine**

**W. Michael Stemmans**
**M. Todd Alley**
**Michael J. Taffaro**
**Jennifer Frederickson**
**Stemmans & Alley**
**668 South Foster Drive, Suite 101**
**Baton Rouge, LA 70806**
**(225) 231-1288**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **Teche Electric Supply, L.L.C.**

PETERS, J.

This litigation arises from a work-related injury sustained by the plaintiff, Michael Vidrine, while in the employ of the defendant, Teche Electric Supply, L.L.C. (Teche Electric). Teche Electric appeals the workers' compensation judge's (WCJ) denial of its La.R.S. 23:1208 fraud defense; its finding that Mr. Vidrine proved both continuing disability and the necessity of surgery; and the award of penalties and attorney fees based on Teche Electric's termination of weekly indemnity benefits. For the following reasons, we affirm.

**DISCUSSION OF THE RECORD**

Mr. Vidrine was a ten-year employee who performed sales and warehouse duties at Teche Electric's Ville Platte business location. On March 13, 2006, he injured his lower back while moving a spool of wire weighing between 300 and 400 pounds. Because his supervisor, Stanley Darbonne, was not present at the time of the accident, the only person he told about the accident and injury was his co-worker, Damon Thomas. The next morning, Mr. Vidrine telephoned Mr. Darbonne and said that he had sustained an injury at work, that he was still hurting, and that he was going to remain at home. The following day, he reported the accident to Lisa Hebert, Teche Electric's Human Resource contact, who authorized him to seek treatment.

Mr. Vidrine initially sought medical treatment on March 15, 2006, from his family physician, Dr. Charles Fontenot, a Ville Platte, Louisiana, general practitioner. Dr. Fontenot's initial examination revealed spasms and pain in Mr. Vidrine's lower back and down to his left foot. His initial diagnosis was acute lumbar strain, and he prescribed medication. On a follow-up visit on March 22, 2006, Mr. Vidrine had not improved, and Dr. Fontenot recommended physical therapy. Despite this

conservative treatment, Mr. Vidrine did not improve. Dr. Fontenot then referred his patient to Dr. George Williams, an Opelousas, Louisiana, orthopedic surgeon.

In examining Mr. Vidrine, Dr. Williams found spinal stenosis at L3-4 and L4-5 and recommended surgery, which would consist of a decompression at L3-4 and L4-5, together with a spinal fusion. Teche Electric refused authorization for this procedure. Thereafter, Mr. Vidrine was examined by two Lafayette, Louisiana orthopedic surgeons; Dr. Gregory Gidman and Dr. W. Stan Foster. Dr. Gidman's examination was at Teche Electric's request, and Dr. Foster's was at the request of the WCJ. Both doctors disagreed with Dr. Williams' recommendation of surgery, finding that Mr. Vidrine had merely suffered a strained back and was at maximum medical improvement.

On June 7, 2007, Mr. Vidrine filed a disputed claim for compensation seeking penalties and attorney fees based on Teche Electric's refusal to authorize the surgery recommended by Dr. Williams. The same day, Teche Electric terminated his weekly indemnity benefits. Supplemental pleadings raised the issue of forfeiture under La.R.S. 23:1208, as well as the termination of indemnity benefits.

After trial, the WCJ rendered judgment rejecting Teche Electric's fraud defense under La.R.S. 23:1208; finding Mr. Vidrine temporarily, totally disabled; reinstating benefits retroactive to June 7, 2007; finding that Teche Electric's termination of his indemnity benefits was arbitrary and capricious; awarding Mr. Vidrine $7,500.00 in attorney fees and $2,000.00 in penalties; and finding that the surgery recommended by Dr. Williams was reasonable and necessary. Teche Electric has suspensively appealed from this judgment, raising four assignments of error:

(1)     The WCJ erred in finding that its 1208 fraud defense was without merit.

2

(2)     The WCJ erred in finding that the surgery recommended by Dr. Williams was reasonable and necessary.

(3)     The WCJ erred in finding that claimant met the burden of proof with regard to establishing disability as a result of the alleged accident.

(4)     The WCJ erred in finding that the employer acted arbitrarily or capriciously in terminating claimant's benefits and that the denial of the claim was unreasonably controverted.

**OPINION**

In workers' compensation matters, factual findings are subject to the manifest error standard of review. *Stoute v. Petroleum Ctr.*, 07-1533 (La.App. 3 Cir. 4/2/08), 980 So.2d 818. In instances where there is a conflict in the evidence, reasonable inferences of fact will not be disturbed on review. *LeJeune v. Trend Servs. Inc.*, 96-550 (La.App. 3 Cir. 6/4/97), 699 So.2d 98. If the WCJ's factual finding emanates from a finding regarding a witness' credibility, then that finding is entitled to great deference upon appeal. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Furthermore, absent manifest error, the WCJ's decision to award penalties and attorney fees will not be reversed on appeal.

### *La.R.S. 23:1208 Fraud Defense*

Louisiana Revised Statutes 23:1208(A) provides in pertinent part that "[i]t shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." In order to prove fraud as defined by this provision, an employer must prove: (1) a false statement or misrepresentation by the employee, (2) willfully made, and (3) that it was made for the purpose of obtaining workers' compensation benefits. *Campbell v. City of Leesville*, 07-1061 (La.App. 3 Cir. 1/30/08), 974 So.2d 908, *writ denied*, 08-491 (La.

3

4/25/08), 978 So.2d 366. Upon proof of these three elements, the penalty to the employee is forfeiture of the right to recover any workers' compensation benefits. La.R.S. 23:1208(E).

Teche Electric bases its right to seek forfeiture of benefits under La.R.S. 23:1208 on Mr. Vidrine's deposition statements that he was unable to perform certain activities following his work-related accident, surveillance evidence which appeared to contradict his testimony, and Dr. Gidman's testimony that Mr. Vidrine reported being totally inactive since his injury—that he mostly watched television while sitting in a recliner, did not drive, wash his vehicle, or cut grass, but would occasionally wash dishes.

Mr. Vidrine's deposition was taken on September 19, 2007, wherein he was asked a general question concerning what he could do before the accident as opposed to what he could do thereafter. In response, he stated that he could no longer do "[his] yard work and the little bit of hunting and fishing that [he] used to do." He additionally testified that as of the date of the deposition, he could only sit for short periods of time before experiencing pain and that he had only worked in his yard one time since the accident.

In support of its fraud argument, Teche Electric relied on the findings of Nick Arnold and Larry Zerangue, two private investigators it hired to conduct surveillance of Mr. Vidrine. Mr. Arnold did not testify. Instead, the parties stipulated that if called as a witness, he would testify that on May 10, 2007, he observed Mr. Vidrine mowing his yard, hauling and dumping dirt with a wheelbarrow, and then spraying the dirt with water; that during his surveillance, he saw no limitations in Mr. Vidrine's movements; but that he had to prematurely terminate his surveillance

because Mr. Vidrine was alerted to his presence by a child. The short video made by Mr. Arnold shows Mr. Vidrine using a water hose to spray down his yard and then mowing the grass with a push lawnmower.

Mr. Zerangue testified that he performed surveillance on Mr. Vidrine for six to eight hours per day on March 21, 24, 26, and 27, 2008. Over those four days, he observed Mr. Vidrine digging and picking up plants in his garden, walking around his garden and back and forth to his residence, speaking to his neighbor, and riding or parking a four-wheeler or tractor. In his four-day surveillance, Mr. Zerangue noticed no limitations on Mr. Vidrine's movements. However, he did acknowledge that thirty minutes was the longest he was able to film without a break because of the activity around the Vidrine home. Additionally, the four-day surveillance produced only approximately one hour of video evidence, which shows Mr. Vidrine using a shovel to loosen dirt in order to pull grass.

Stanley Darbonne also testified concerning his observations of Mr. Vidrine's activities. According to Mr. Darbonne, he drives past Mr. Vidrine's home each day while traveling to and from work and, at different times, he has observed Mr. Vidrine working in his yard. On one occasion, he claimed to have seen Mr. Vidrine standing on a ladder or chair while nailing roofing material on a structure located behind his home. He also claimed to have seen Mr. Vidrine driving his truck and, on one occasion, hauling a boat.

In both his deposition and trial testimony, Mr. Vidrine testified that he could no longer maintain his yard or hunt and fish because of back pain. Specifically, he denied any attempts to weed his garden, plant plants, dig holes, level his yard, or

5

climb a ladder. Other than one time mowing his yard, the most he acknowledged doing was helping his wife by washing dishes from time to time.

According to Mr. Vidrine, the one time he did mow his yard, on May 10, 2007,[1] his efforts caused him to go to the Ville Platte Hospital Emergency Room that evening with swelling and spasms in his lower back. He further explained that he attempted to work in his yard on this particular day because of the encouragement of his employer's claims adjuster. Before his accident, he had been able to mow his yard in slightly over one-half an hour, but this particular attempt took all day to complete because of his need to take frequent rest stops.

The emergency room records of the Ville Platte Hospital support Mr. Vidrine's testimony. Those records reflect that at 7:26 p.m. on May 10, 2007, Mr. Vidrine presented himself to the emergency room complaining of back pain caused by weeding his lawn. Mr. Vidrine stated that this was his last attempt to mow his yard.

While admitting to cutting grass on May 10, 2007, Mr. Vidrine denied using a wheelbarrow to haul dirt as alleged by Mr. Arnold.[2] He acknowledged that in March of 2008, he used a shovel to pull grass out along a fence row, but stated that this activity lasted for only twenty to thirty minutes. However, he denied performing any roofing-type work or using a ladder at any time after his work-related accident.

Mr. Vidrine's wife, Brenda, testified that she was at home on May 10, 2007, when her husband attempted to mow the grass, but denied that her husband used a wheelbarrow to haul dirt. She testified that Mr. Vidrine constantly complained of pain while cutting the grass, limped during the process, and took many breaks. She

_____

[1]The same day as Mr. Arnold's surveillance.

[2]The video taken this day contains no evidence of Mr. Vidrine using a wheelbarrow.

6

supported her husband's testimony that the normally short job took most of the day to complete. She did not recall anyone alerting them to video surveillance and she said that she later took her husband to the emergency room. At the hospital, she said that he told the doctor that his back hurt from cutting the grass. Mrs. Vidrine further testified that she has never seen her husband up on a ladder repairing a roof or performing any labor for more than an hour, but said that she was not present when Mr. Vidrine was videoed by Mr. Zerangue. According to Mrs. Vidrine, these were the only two instances when Mr. Vidrine performed any outside work.

In rejecting Teche Electric's fraud claim under La.R.S. 23:1208, the WCJ made a specific factual finding that Mr. Vidrine was credible in regard to his testimony on this issue. We find no manifest error in this factual finding and, therefore, find no merit in this assignment of error.

### *Request for Surgery*

An employee is entitled to all necessary medical treatment, including surgery, required in the treatment of a work-related injury. La.R.S. 23:1203(A). If recommended, the employee is entitled to surgery if he proves, by a preponderance of the evidence, that the procedure is reasonable and necessary. *Royals v. Town of Richwood*, 42,585 (La.App. 2 Cir. 10/24/07), 968 So.2d 833, *writ denied*, 07-2447 (La. 2/15/08), 976 So.2d 183.

The record establishes that throughout Dr. Williams' treatment, Mr. Vidrine's chief complaints were low back and left leg pain. Initially, Dr. Williams' impression was that Mr. Vidrine suffered from back pain and lumbar spinal stenosis at L4-5, narrowing of the spinal canal, with radiculopathy. However, after reviewing a May 5, 2006 MRI performed at the request of Dr. Fontenot, he also noted spinal stenosis

7

at L3-4. Because physical therapy had exacerbated Mr. Vidrine's pain, Dr. Williams ordered a lumbar epidural steroid injection which provided only minimal relief. It was at this point that Dr. Williams concluded that only surgery, in the form of a posterior lumbar decompression and fusion at L3-4 and L4-5, would alleviate Mr. Vidrine's lower back pain. Without surgical intervention, a procedure rejected by Teche Electric, Dr. Williams felt that Mr. Vidrine was totally disabled. He continued to treat Mr. Vidrine with the only thing available to him: pain medication, muscle relaxers, and anti-inflammatory medication.

After examining Mr. Vidrine and reviewing the medical records made available to him, Dr. Gidman categorically disagreed that surgery was necessary. He detected no objective symptoms during his examination and concluded that Mr. Vidrine's MRI revealed minimal spinal stenosis at L4-5, but otherwise was normal. He found no evidence of neurocompression and no problem at L3-4. Dr. Gidman found Mr. Vidrine positive for four of five Waddell signs during the examination.[3] According to Dr. Gidman, Mr. Vidrine complained of pain upon light palpation of the skin and during trunk rotation, pressure in his lower back with axial loading (pressing down on the head), and inconsistent straight leg raises. With regard to the straight leg raise, Dr. Gidman testified that a patient's symptoms should be similar and that complaints in both the sitting and supine straight leg raise should be within twenty degrees of each other. In the sitting straight leg raise, Mr. Vidrine was negative on the right side and positive at sixty degrees on the left. In the supine straight leg raise, he was positive at forty-five degrees on the right and at ten degrees on the left.

---

[3]Dr. Gidman described Waddell signs as "screening maneuvers that indicate evidence of psychological or psychosocial factors affecting subjective complaints."

Dr. Gidman recommended a CT scan and lumbar myelogram based on Dr. Williams' spinal stenosis diagnosis and Mr. Vidrine's continued subjective complaints. The CT scan revealed minor central soft tissue ridging at L4-5, but no substantial spinal or foraminal stenosis and no evidence of nerve root displacement or compromise. It further revealed a normal disc space at L3-4. Based on this test, Dr. Gidman found no evidence of spinal stenosis.[4]

In disagreeing with Dr. Williams' surgery recommendation, Dr. Gidman stated that nothing in the medical records or his examination indicated that Mr. Vidrine was suffering from any disease or pathology which required the decompression and fusion. He stated that Dr. Williams' recommendation for a "life changing" operation was based solely on slight stenosis and Mr. Vidrine's subjective complaints. In his opinion, Mr. Vidrine was at maximum medical improvement with a maximum of two percent anatomic impairment. He recommended a functional capacity evaluation with validity testing and vocational rehabilitation to return Mr. Vidrine to work within valid restrictions. He opined that Mr. Vidrine would never improve unless he returned to work and that his problems would be compounded tenfold if he underwent this surgery. He recommended that a third opinion be obtained on the need for surgery.

The WCJ heeded Dr. Gidman's recommendation and caused Mr. Vidrine to be examined on March 22, 2007, by Dr. Foster. According to Dr. Foster, his physical examination of Mr. Vidrine revealed no objective symptoms and his evaluation of the medical records revealed no evidence of central or foraminal stenosis in either the MRI or the CT scan. In the absence of any positive findings, Dr. Foster opined that

---

[4]The lumbar myelogram was not performed because Mr. Vidrine is allergic to iodine.

Mr. Vidrine was suffering from degenerative changes in his lumbar spine. In reaching this conclusion, he agreed with Dr. Gidman that Dr. Williams' surgical recommendation was not warranted. He found Mr. Vidrine to be at maximum medical improvement with no permanent impairment. He also agreed with Dr. Gidman's recommendation that a functional capacity evaluation with validity testing should be performed before Mr. Vidrine returned to work.

In concluding that surgery was necessary, the WCJ gave more credence to the qualifications and testimony of Dr. Williams than of the other two physicians. Specifically, the WCJ found Dr. Williams to have better credentials in spine treatment and surgery than Drs. Gidman and Foster and gave his testimony greater consideration because he was Mr. Vidrine's treating physician.

> [I]n general, the observations and opinions of the treating physician are to be accorded greater weight than those of a physician who has only seen the party for purposes of rendering an expert opinion concerning the party's condition. "However, the treating physician's testimony is not irrebuttable, as the trier of fact is required to weigh the testimony of all of the medical witnesses." *Freeman v. Rew*, 557 So.2d 748, 751 (La.App. 2nd Cir.1990) (citations omitted), *writ denied*, 563 So.2d 1154 (La.6/01/90). Ultimately, "the weight afforded a treating physician's testimony is largely dependent upon the physician's qualifications and the facts upon which his opinion is based." *Id.*

*Freeland v. Bourgeois*, 06-932, p. 31 (La.App. 3 Cir. 1/24/07), 950 So.2d 100, 119-20, *writ denied*, 07-409 (La. 4/5/07), 954 So.2d 144.

The WCJ's determination with regard to the necessity for surgery is entitled to great weight and will not be disturbed on appeal unless clearly wrong or manifestly erroneous. *Cajun Welding & Machine Co. v. Deville*, 03-548 (La.App. 3 Cir. 11/5/03), 858 So.2d 875. In giving great weight to the WCJ's findings concerning the individual doctors' qualifications and the underlying facts supporting Dr. Williams' opinion, we cannot say that the WCJ was clearly wrong or manifestly

10

erroneous in accepting Dr. Williams' recommendation that the performance of a posterior lumbar decompression and spinal fusion at both the L3-4 and L4-5 levels was reasonable and necessary.

Dr. Williams' recommendation is based on Mr. Vidrine's limp, his complaints of lower back and left leg pain, and the positive straight leg raising test. Although both the MRI and CT scan provided normal results, they did reveal slight spinal stenosis at L4-5. In reaching his conclusion that surgery was necessary, Dr. Williams was aware that early conservative treatment was unsuccessful and declined to recommend physical therapy because it had exacerbated Mr. Vidrine's pain when prescribed by Dr. Fontenot. While we may have reached a different conclusion, based on the medical evidence before us, we find no merit in this assignment of error.

### *Disability Status*

In order to receive temporary total disability benefits, an employee must prove his physical inability to engage in any employment or self-employment as a result of his work-related injury. La.R.S. 23:1221(1)(c). The burden of proof in this instance is by "clear and convincing evidence, unaided by any presumption of disability." La.R.S. 23:1221(1)(c).

At the time of trial, Mr. Vidrine had not yet been released to return to work by Dr. Williams, and had not seen a vocational rehabilitation counselor or undergone a functional capacity evaluation. In describing why he did not believe he could return to work, Mr. Vidrine testified that he still had a lump in his back that tended to swell with movement and cause spasms and pain into his left leg.

Nonetheless, Ms. Hebert testified that Teche Electric twice offered Mr. Vidrine a light-duty position in May of 2007. According to her, the certified mail letters

11

offering the position were returned unclaimed.[5] The position offered to Mr. Vidrine involved light desk work and taking telephone orders and carried the same wage scale as he had previously received. Ms. Hebert stated that before making the offer, she consulted with Mr. Darbonne and a vocational rehabilitation counselor. No effort other than sending the allegedly unclaimed letters was made to inform Mr. Vidrine about the light-duty position.

Mr. Vidrine denied that Teche Electric ever offered him a light-duty position, stating that the only certified letter he received from Teche Electric concerned a request from Mr. Darbonne for him to return his office keys. He testified that he voluntarily terminated his employment with Teche Electric in March of 2007, in order to access his 401K retirement plan. Mrs. Vidrine testified that she was not aware of any certified letter offering light-duty employment, and she supported her husband's testimony that the only certified letter received was that from Mr. Darbonne concerning the office keys.

As previously noted, Dr. Williams stated that Mr. Vidrine is totally disabled and that he will remain so until after surgery. Drs. Gidman and Foster both found him to be at maximum medical improvement and recommended that he undergo a functional capacity evaluation with validity testing to assess his work capabilities. In addition, Dr. Gidman felt that Mr. Vidrine should undergo a vocational rehabilitation assessment in order to return to work.

Phil Moory, the special investigator handling the claim for Teche Electric, testified that the vocational rehabilitation assessment recommendation went by the wayside when Teche Electric raised its La.R.S. 23:1208 fraud defense. According

---

[5]The record contains a copy of the letters, but contains no evidence other than Ms. Hebert's testimony that they were sent certified mail and unclaimed.

to Mr. Moory, he recommended termination of Mr. Vidrine's workers' compensation benefits on June 7, 2007, for several reasons: (1) the reports of Drs. Gidman and Foster stating that Mr. Vidrine was capable of returning to work, (2) the fact that he was offered a light-duty position by Teche Electric at his previous wage, (3) the fact that he had voluntarily terminated his employment with Teche Electric, and (4) the fact that surveillance revealed Mr. Vidrine performing activities he said he was incapable of doing. However, Mr. Moory acknowledged that his recommendation was based primarily on the surveillance results and not the medical reports. He also acknowledged that because of prior dealings with Dr. Williams wherein he questioned the doctor's medical opinions, he felt that Dr. Williams' recommendation was off base.

Based on the evidence presented, we find that it was not unreasonable for the WCJ to find that Mr. Vidrine is still temporarily, totally disabled. Although Drs. Gidman and Foster both found him at maximum medical improvement, both recommended additional testing in order to determine his capabilities prior to returning him to work. Until the functional capacity evaluation and vocational rehabilitation counseling are provided, we find no error in the WCJ's determination that Mr. Vidrine is entitled to temporary total disability in the amount of $320.02 per week from June 7, 2007.

Additionally, we find no error in the WCJ's conclusion that Teche Electric acted arbitrarily and capriciously in terminating Mr. Vidrine's indemnity benefits. Mr. Moory admitted that his decision to terminate these benefits was based heavily on the surveillance video, rather than the medical reports, and because of prior dealings he had Dr. Williams. Accordingly, this judgment is affirmed.

13

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the WCJ in all respects and assess all costs of this appeal to Teche Electric Supply, L.L.C.

**AFFIRMED.**